*and the Court having taken time to consider of their judgment, it was this day pronounced by the Chief [*176 Justice.
 

 McKean, C. J.
 

 This cause was tried at Nisi Prius, in Chester, when the jury found a special verdict, which contains the following statement: That a certain John Hunter, being seised in fee of the premises in question, on the 30th of July 1751, made his last will and testament in writing, duly executed, and, among other things, devised in the words following : “ I give and bequeath to my eldest son, James, when he arrives at the age of twenty-one years, all and singular the messuage, &c., to hold to him, his heirs and assigns forever.” “ Item, I give and bequeath unto my youngest son, John,
 
 when
 
 he arrives to the age of twenty-one years, one hundred acres of land, that I bought of John Chads, known by the name and called Jehu’s Hundred, and the house and lot of seven acres of land, lying on the south-west side of the Connestogoe road, near the Whitehorse sign ; to hold to him, his heirs and assigns for ever.” That the estate devised the youngest son John is the one in question. That afterwards, he devises “ to his wife, Anne, the use and profits of all his said lands and tenements, for the maintenance and education of his children, until his said sons should attain to their several ages aforesaid, successively.” That the testator died seised thereof, leaving James, hi? eldest son, and John, Margaret, Hannah, Elizabeth, Anne and Mary, his children, and also Martha, who intermarried with John Rattew, one of tho defendants. That the other defendant intermarried with the daughter Anne. That John, the devisee, died in the year 1769, under age, intestate, unmarried, and without issue, living his mother, his brother James, and all his sisters. That the lessor of the plaintiff has the estate that was in James, who was found to be the heir-at-law of John. But whether, upon the whole matter, the defendants be guilty of the trespass and ejectment, the jurors know not, &c. — in common form.
 

 The questions that arise upon this special verdict, are two : 1st. Whether the estate vested immediately in John, or remained in contingency, until he came of age ? And, if it be a vested devise, 2d. Whether the lands in dispute went to James, his eldest brother, as his heir at common law, or were subject to distribution, under the act of assembly, amongst his brothers and sisters, as he died intestate, under age, unmarried, and without issue ?
 

 To prove that it was a contingent and lapsed devise to John, the counsel for the defendants cited 3 Bacon’s Abr. 478; 1 Burr. 227; and 2 Salk. 415; and insisted, that where the time is annexed to the
 
 substance
 
 of the gift, and not to the
 
 possession,
 
 there it is a lapsed devise, by the devisee’s not living until the time specified.
 

 And to show, that if the estate vested immediately in John, by the devise, upon the death of his father, yet it descended and was to be distributed equally among Ms surviving brother and sisters, they produced the
 
 “
 
 supplement to an act of assembly, intitled “ An act for the better settling intestates’ estates,” passed the 23d of March 1764, in page 307 of the first volume of
 
 *182
 
 Pennsylvania Laws :
 
 (a)
 
 and *also cited a ease determined at Nisi Prius, in Bucks county, by judges Lawrence and Willing, in 1773, in an ejectment by Joseph Heister’s Lessee
 
 v.
 
 Jacob Lambert; wherein this point was ably argued and adjudged for the party claiming distribution,
 

 (b)
 

 For the plaintiff, it was insisted, that this Avas a vested devise, ana in support thereof, they cited 3 Bacon’s Abr. 478; 2 Vent. 366; 3 Co. 21; 8 Vin. 370, pl. 13; 373, pl. 12, 16; Gilb. Rep. in Eq. 36; 2 Mod. 289; 2 Freeman 243; 2 Vern. 561, and 1 Burr. 228. And that the cases mentioned on the other side were of lapsed legacies, and not
 
 clevises.
 

 And on the 2d question, they urged, that the original act of assembly, as Avell as the supplement, must be taken into consideration, and then it will appear, that the supplement only related to such lands as should come to a child from an
 
 intestate
 
 father or mother, by descent, and not to those he should acquire by purchase, as in the present case, by the will of the father. And that this case does not come within even the words of the act, which are,
 
 “
 
 if after the death of a,ny father and mother, any of their children shall die in their minority and intestate, but not otherwise, &c.;” for the mother survived the son John, the devisee. It was further said, in answer to the case cited to have been determined at Nisi Prius, in Bucks, that the two judges did not pretend to be skilled in the laAV, and that they were obliged to give their judgment on a sudden, andAvithout deliberation; and that, therefore, it ought to have little or no weight.
 

 The Court have detained this action under advisement until uoav, and Avith respect to the first question, whether the devise to John is a vested, or contingent and lapsed devise ? they are clear, that to effectuate the intention of the devisor, it must be construed a
 
 vested
 
 devise.
 

 The absolute property is given to John, when he should arrive at age, and the use and profits in the meantime to his mother, for the maintenance and education of all the children. This last devise is a
 
 particular
 
 interest, and no more than a chattel interest. The son John was the principal object of the testator’s bounty, and if he had married, and died before twenty-one years of age, leaving
 
 children,
 
 he certainly meant not that this estate should go from them. This, therefore, was an immediate gift to John, though he Avas not to have the
 
 possession
 
 until he came of age. All the cases support this judgment. Legacies are governed by the rules of the civil and ecclesiastical courts ; devises by the intention of the testator.
 

 The 2d question is, whether by the intestate laws of this state, the lands in dispute belonged to the eldest brother, James Hunter, or to all the sisters equally, upon the death of John, intestate, under ago, unmarried, and without issue ?
 

 I will make an observation or two, previously to my delivering the particular opinion of the court on this point.
 

 *1. Where the intention of the legislature or the law is doubtful, and not clear, the judges ought to interpret the law to be, what is most consonant to equity, and least inconvenient. Vaugh. 38, 285.
 

 
 *183
 
 2. A court is not bound to give the like judgment, which had been given by a former court, unless they are of opinion that the first judgment was according to law
 
 (a)
 
 ; for any court may err ; and if a judge conceives, that a judgment given by a former court is erroneous, he ought not in conscience to give the like judgment, he being sworn to judge according to law. Acting otherwise would have this consequence; because one man has been wronged by a judicial determination, therefore every man, having a like cause, ought to be wronged also. Vaugh. 383.
 

 We will now have recourse to the supplementary act of assembly (1 State Laws 397), and consider the words and the spirit of it. In the case before the court, John Hunter, the devisee, died intestate, under age, unmarried and without issue, after the death of his father, his mother surviving him. The words of the act are, after the death of any father
 
 and
 
 mother, so that he was not within the words ; but I am of opinion, that the word
 
 and,
 
 in this place, must be construed
 
 or •
 
 as, in the very next sentence, the mother is given an equal share of the personal estate of such intestate child, which came from the father, with the brothers and sisters of such child ; which shows, the legislature did not mean that the estate should not be distributed, unless both parents were dead. The clause respecting the real estate of an infant intestate, does not take notice or distinguish, whether it was to come from the father of mother, by
 
 descent
 
 or
 
 purchase,
 
 or
 
 how
 
 it was to be acquired, or from
 
 whom
 
 / but says generally that all his lands, &e., shall be divided, &c. And it is remarkable, that the personal estate of such an intestate is to go in the same manner with the real estate : but in the following sentence there is an express provision for the mother out of that part of the personal estate, to which the intestate shall be entitled under such father; which shows, manifestly, that the mother was not to have any share of any personal estate that should be acquired by such child, in any other manner than from the father ; and perhaps, they meant in both cases an
 
 intestate
 
 father ; but this is by no means clear ; it is very doubtful, frond the disposition of •the personal estate, that was acquired differently ; and our constitution and laws favor equality and distribution of estates.
 

 This act of assembly has been made upwards of twenty years ago, and the question upon it now before the court has received at least one judicial determination, thirteen years ago, that the real estate, in such a case, should be distributed among the intestate’s brothers and sisters equally. When there has been a solemn determination before two judges of the supreme court, after debate, and an acquiescence under it, there ought always to be great consideration paid to it, that the law may be certain. Upon the best information we can obtain from the gentlemen of the law in different parts of the *state, we find that estates have been distributed agreeable to ^ this determination. And as this construction of the act has been so *- long accepted and received as a rule of property, though some may not be satisfied in their private judgment, were the matter to be newly resolved, it is but reasonable, we should acquiesce and determine the same way, in so
 
 *184
 
 doubtful a case, to prevent greater mischiefs which may arise by shaking a number of estates, and from the uncertainty of the law.
 

 Let judgment be entered for the defendants,
 
 (a)
 

 (a)
 

 See this act at length, in a note to p. 159 of the 3d vol. of Smith’s Laws,
 

 (b)
 

 See
 
 ante,
 
 p. 20.
 

 (a)
 

 The same sentiment was expressed by Judge Duncan, in Bevan v. Taylor, 7 S.
 
 &
 
 R. 401, referring to the opinion in the text.
 

 (a)
 

 The decision in this case was under the act of 1764, and the case of Larsh
 
 v.
 
 Larsh, Addis. 310, was determined upon this authority. In Shippen v. Izard, 1 S. & R. 222, it was
 
 held,
 
 under the act of 1794, that if an estate be
 
 devised
 
 to one, by his father,, or paternal grandfather, and he die, leaving neither widow, nor Issue, nor father, but leaving a mother, she is not entitled to enjoy the estate during her life.