### STODDER v. POWELL.

1. In this State a possession for twenty years under claim of title, creates a presumption of a grant.
2. Where a special verdict shews that the plaintiff has a right, but does not define it with sufficient certainty, so that the Court can render a proper judgement on it, a *venire de novo* will be awarded.

SAMUEL POWELL brought in the Circuit Court of Mo-
bile county, in 1823, an action of trespass, endorsed under
the statute " to try titles," against Seth Stodder, to re-
cover of him the possession of the Globe Tavern in Mo-
bile, and the lot upon which it stood, and *damages*

for the detention. The defendant pleaded the general issue, and at February term, 1826, a trial was had, and a special verdict was found by the jury.

By the special verdict, the jurors say "it was proven that Dominique Dolive claimed the Globe Hotel, by having in his possession a paper with a *biscuit* attached to it. Dominique Dolive, agreeably to the evidence, died twenty or twenty-eight years ago. The heirs of Dominique Dolive, agreeably to the evidence, are five in number. It was proven that all the heirs of D. Dolive relinquished their right to Sifroy Dolive. Sifroy Dolive was proven to be seven or eight years old at the death of his father, and twelve or thirteen when his brother told him he might have this property. It was proven that he, Sifroy Dolive, did convey the premises to Thos. Powell, in writing; he conveyed them after his marriage. The conveyance was not produced by the plaintiff on the trial. The cause of the absence of the conveyance was not proven. It was proven by the plaintiff that there was a paper said to be a certificate from the United States' Land Office; the contents of it were not proven. No other proof of the above, than what is here stated. It was proven that Thomas Powell held possession of the premises six or eight years; he died possessed of the same. Powell and those under whom he claimed, was in possession of the premises twenty-three or twenty-eight years. Powell, agreeably to the evidence, died, leaving a son named Daniel, who also died before the institution of this suit, his age about seventeen years. It was not proven that Daniel did take possession by himself or tenant. It was proven that S. Stodder went into possession under the lease of Louis Dolive, Nicholas Weeks and Daniel Duvol, hereto annexed. It was proven that Stodder was in possession at the institution of this suit. It was proven that the yearly value of the premises was in 1823 $500, in 1824 $500, and in 1825, 6 or $700. It was proven that Samuel Powell was the only brother of Thomas Powell, at T. Powell's death. It was proven that he had sisters living. It was proven that the children of Theophilus Powell, a brother of Thomas Powell, were living at the death of Thomas Powell. It was not proven how many uncles and aunts Daniel Powell had at his death, he had aunts and uncles living. It was proven agreeably to the lease, that it had not expired at the time of the suit brought."

Annexed to the verdict is a lease in due form, made at Mobile, the 1st of December, 1820, by Louis Dolive, Nicholas Weeks, and D. Duvol, as executors of the estate of Thomas Powell, to Seth Stodder, for the premises in question for five years, at the yearly rent of $500. The deed is signed by *Louis Dolive, ex-cutor et guardian,* and by *D. Duvol, executor.* (But there was no evidence that they were such executors.)

The jury refer to the Court the matters of law arising upon this evidence, and if in the opinion of the Court the defendant be guilty, they so find, and assess the plaintiff's damages at $1600; if otherwise, they find for the defendant.

The Court below upon this verdict, gave judgement for the plaintiff, for the premises, damages, and costs. The defendant brought the cause to this Court, and assigned several matters as error, all in the judgement rendered against him by the Court, on the verdict.

A. B. Cooper, for plaintiff in error.

The special verdict returned by the jury is not sufficient to sustain the judgement. The principal objections to it are: 1st. The insufficiency and uncertainty of the *verdict.* 2nd. That the defendant in error has shewn no title in himself. 3rd. That the defendant in error was tenant in common with others, and could only sue for and recover his moiety, &c.

I. The verdict is insufficient and uncertain. 1st. In not finding whether Dominique Dolive was actually seized or possessed. 2nd. In not finding how Sifroy Dolive obtained right or possession. 3rd. In not finding how the other heirs of Dominique Dolive parted with their right. 4th. It does not find how Thomas Powell acquired a right to the premises. 5th. It does not shew whether Daniel Powell was the heir and only heir of Thomas Powell. 6th. In not finding who was the heir of Daniel Powell. 7th. Stodder's lease was not expired at the time the suit was commenced. 8th. In not finding who the defendant Samuel Powell is, and in what right, and from whom he claims a title; and this last objection is very material, inasmuch as the number of heirs would be increased, and the chain of title would be different in the event of Daniel or Thomas being last seized. A special verdict should be certain, and should shew every

37

JANUARY 1828.

Stodder
v.
Powell.

fact requisite to enable the Court to pronounce judgement. Much certainty is required in special verdicts. [a]

II. The defendant in error has shewn no title in himself. If the verdict is certain and sufficient in itself, still it shews no title in Samuel Powell. He ought not to be permitted to rely upon a bare possession, because paper titles are referred to, which should have been produced and relied upon, they being the best evidence the nature of the case will admit of. But possession alone gives no title to *Crown Lands*. [b] If the defendant claims by descent, he should have shewn a complete chain down to the person last seized, who was Daniel Powell. For although the jury say that Daniel Powell was not in possession of the premises, yet inasmuch as they find that Thomas Powell, father of Daniel Powell, died seized, by operation of law the descent was cast upon Daniel, and the possession being in a tenant, his possession was the possession of Daniel. [c] It must be admitted, that if Daniel was never in possession, and there was no tenant, Thomas Powell was the person last seized, and defendant must trace his title from him only. A plaintiff in ejectment or trespass, must succeed on the strength of his own title. [d] The appellee has not shewn such a possession in himself as would have enabled him to maintain an action of trespass. [e]

III. But if we were to admit that the verdict was certain and sufficient, and that the title of Samuel Powell was clear, yet he being tenant in common with others, could only sue for and recover his moiety of the premises. [f] The jury finding that Thomas Powell, father of Daniel, had several brothers and sisters, of course they were all entitled to a share of the estate, supposing that Thomas was the person last seized. But if Daniel was last seized, then not only the brothers and sisters of Thomas Powell, the father, but the brothers and sisters of Daniel's mother were entitled to shares. Descents in Alabama being regulated by statute, it might be a doubt whether the estate in question was one in common, *or in joint tenancy*; but supposing it to be a joint tenancy, still the action was wrong, for joint tenants must all join. [g] It may be urged that if the plaintiff below sued in a wrong character, it should have been remedied by a plea in abatement, shewing that he was tenant in common or joint tenant. In answer, it must be observed that the

*a* 11 Wheat. 415.
6 Danes Ab. 234–
5. 5 Bacon's Ab.
288. 3 Teu. 209.
1 Hen. & Munf.
235. 2 Munf. 283.
1 Stlon's Pr. 472.
2 Tidd 805–6.
*b* Adams on Ejec.
78.

*c* 2 Cruise Dig.
Title descent, p.
408. Sec 67 to 75.

*d* Runnington on
Eject. 15.

*e* 3 Blk. 201, 202,
209, 210. Laws
Ala. 488.

*f* Run. on Eject.
222–3. 7 Bacon
Ab. 28. 1 Coke
Lit. 3. Sec. 311.
314.

*g* Coke Lib. 3.
§ 311 2 Cruize
Dig title joint
tenant, p. 517.
§ 59.

plaintiff must depend on his own title ; the defendant can-not be presumed to know the plaintiff's chain of title, or the proof which may be advanced, nor the extent of his demand, and could not answer by such plea; besides, this was a case where a plea was not required. If the defendant is sued by a wrong name or character, he must ple id it, but the plaintiff must take care to describe himself as that the proof may apply to him.

ACRE, for defendant in error. The verdict finds that Thomas Powell, the ancestor of the plaintiff, died seized, that he and those under whom he claimed, had been in possession about twenty-eight years, and that at the time of his death, he left an infant son, who died at about the age of seventeen years. and who never had by himself, guardian nor tenant, been in possession; that Samuel Powell the plaintiff, was the brother of Thomas, who died in possession ; that Stodder, the appellant, was in possession of the premises, at and before the time of the action brought, under a lease executed by persons styling themselves executors of Thomas Powell ; but no will is found, nor any thing else to authorize them to interfere and take control of the real estate of Powell.

Neither the plaintiff or defendant below shewed any written title ; but the plaintiff, Powell, proved a possession of upwards of twenty-eight years in his immediate ancestor and Dolive, under whom it is found by the verdict he claimed by purchase. To maintain this action in England, a possession of twenty years is sufficient; in New-York, less will do. [a]

The action is rightly brought by Samuel Powell, as heir of Thomas, because Thomas was last seized. The person last seized transmits the inheritance. [b] This statute in this respect, is in accordance with the common law. [c]

It is not necessary that tenants in common should join in the action. [d] But if one tenant in common brings an action where the others ought to join, the defendant to take advantage of the defect, must plead that matter in abatement, otherwise the plaintiff shall have judgement. [e]

PARSONS, for plaintiff in error, argued in conclusion.

The cause was argued at the July term, 1827, and the Court took till this term to advise, when the following opinions were delivered :

[a] 1 John. R. 156. 4 John. 202. 10 John. Smith vs. Lorillard.

[b] Laws Ala. 385. § 16.
[c] Adams on Eject. 252. Co. Lib. 11. b. cited.

[d] 3 Bac. 706, top page.

[e] 3 Bac. 708. Carthew 63.

By JUDGE TAYLOR, after stating the case.

THE plaintiff in error insists the judgement below should be reversed, because

First, The verdict is insufficient and uncertain.

Second, The defendant has shewn no title in himself.

Third, The defendant was tenant in common with others, and could only sue for and recover that part of the land to which he is entitled.

The case is altogether novel in our State, and this circumstance, together with the importance of some of the points involved, added to the amount in controversy in the case itself, has caused the members of the Court to delay a decision until the present time.

It is impossible to consider the first point, that is, the objection to the verdict, without embracing the last; and as the members of the Court feel no disposition to avoid giving an opinion on each of the points which have been made, I shall proceed to do so; not however exactly in the order in which they are stated, but beginning with the second, which is, that defendant in error has shewn no title in himself. It is understood by this, that the defendant shewed no *paper* title, and that without such title he cannot recover.

That a recovery may be had in the action of ejectment in England, merely upon the proof of possession by the plaintiff, if that possession has been of sufficient length, is admitted. It is not controverted by the counsel for the plaintiff in error, but that twenty years possession tolls an entry there; that in an action of ejectment, the mere proof by the defendant, that he and those under whom he claims, have been in possession for that time, is a complete defence; and if the plaintiff proves against the defendant a possession anterior to that of the defendant, for twenty years, when that of the defendant has been of a shorter time, the plaintiff shall have judgement. Indeed a possession of twenty years, at common law, raises a presumption that the party holds by a grant which is lost, and he is considered seized, which none is, except he who has an estate of inheritance. This rule, however, does not extend so far as to affect the crown, and proof by the defendant that the land which is sued for is crown land, will prevent a recovery.

It is contended, however, that the reason for these decisions at common law do not extend to this country, be-

cause in England, grants are generally matters of presumption ; that they rarely exist in fact, and these presumptions are necessary in that kingdom ; that a different rule should prevail in our country, where all the lands owned by individuals are granted, and titles can readily be traced to one common source ; therefore as the reason ceases, the law should fall with it. I hold it to be the truest wisdom to adhere to the policy under which our ancestors have happily lived for a succession of ages, unless the policy of change is apparent. I would sustain no principle or practice, merely because it was old, nor would I depart from it, unless I saw clearly the expediency of doing so. It might be a sufficient answer to those who urge this departure from the common law, to say, "*ita lex scripta est.*" But I would inquire, what injustice or injury can an 'adherence to it produce. He who has the title derived from the United States by grant, will always have the right of property; therefore, his interest will not be endangered. The United States cannot lose by it, as time cannot affect them, and it will in the general, only enable one who has had a long and continued possession, to recover land from which he has been ousted, by some person totally without title. And although those who have derived title from the United States, if they lose their evidence of title, may at the " General Land Office," obtain a copy of the grant, yet that office might be burnt, deeds from grantees might be lost, and those of our citizens, whose lands have been grant-d by Spain and Great Britain, in the event of a loss of their papers, might find it utterly impracticable to repair the loss.

I therefore believe that reason *here*, as well as in England, is in favor of the common law. As in this case, the plaintiff proved a possession of upwards of twenty years, in those under whom he claims, it was unnecessary for him to produce on the trial any written title. If the defendant below had attempted to prove a right of property in himself, it would have then been necessary for the plaintiff to have shewn a still better title, which must have been by written title ; and it is my impression at present, that he would be authorized to do so in this action, as the General Assembly probably intended to substitute it for all actions, both real and mixed. But it is contended by the plaintiff in error, that the defendant in error is

Stedder
v.
Powell.

tenant in common with others, and could only sue for and recover his proportion, &c.

It is considered that those to whom real estate descends in this State. are not tenants in common, but tenants in coparcenary, or in that nature.  The general rule at common law is, that real estate descends to the oldest son; but if there be no *heir male*, it then descends to all the daughters in coparcenary.  Although it may not be technically correct to term the heirs in this State coparceners, yet they certainly are placed very much in the same situation that coparceners are in England.  Yet this is, as to the matter now under consideration, more a change of name than any thing else ; for as to suing and being sued, the same rules apply in a great measure to each, where tenants in common hold by the same title.  It is a general rule that joint tenants, coparceners, and tenants in common, shall join in an action. *a* But it is not error if they do so ; for if one brings the action, he shall recover the part to which he is entitled, for the bringing of the suit is a severance of the tenancy, and the person suing shall recover the amount of his or her interest. *b*

*a* See 1 Coke.
Litt. 163 l. 1
Chit. Pl 53.

*b* Adams on Eject.
187.

But it is not necessary that the plaintiff should only *sue for* the part to which he is entitled ; if he make a demise of the whole, he shall recover so much as he proves title to.  This is a general principle governing the action of ejectment, and the kind of action brought in this instance. certainly would not change it.  It may however be found laid down in Adams on Eject. 187–8.

This brings to notice the other position taken by the plaintiff in error, viz : the insufficiency and uncertainty of the verdict.

From the facts found in the verdict, I am inclined to the opinion that Thomas Powell was the person last seized ; that Daniel Powell never was seized either by himself or his tenant, and of course, that the present plaintiff must come in as one of the heirs of Thomas Powell yet on this subject no opinion is now expressed. But the verdict does not inform us how many heirs there were. either of Thomas Powell or Daniel Powell.  It merely finds that the plaintiff was the only brother of Thomas Powell, living at the time of his death. and that he left sisters and children of a deceased brother, and that Daniel Powell left uncles and aunts ; but how many the jury did not know.  These sisters are each entitled

to an equal part with the plaintiff, and the children of the
deceased brother, to the part to which their father would
have inherited had he been living. If we consider
Thomas Powell as the person last seized, and if Daniel is
the person from whom title is derived by plaintiff, then
the next of kin on the maternal side, are also interested.
In not finding the number of the sisters and of the next
of kin on the maternal side of Daniel, the verdict is un-
certain, and for this cause, the judgement must be revers-
ed. But as the plaintiff is entitled to recover something,
and the jury have found facts necessary to a correct judge-
ment, in an uncertain manner, it is considered the proper
course to remand the case that a *venire de novo* may be
awarded. This could be done even if the position of the
plaintiff in error be true, that the jury have found only
the evidence of *facts* and not the facts themselves. [a] It is  a Tidds Prac. 307
contended by the defendant in error, if too few persons
were joined as plaintiffs in the action, advantage must be
taken of this by plea in abatement, otherwise the person
suing will be entitled to judgement for the whole premi-
ses. It is certainly the law in actions of tort, *for injuries
done to the joint property* of joint tenants, coparceners or
tenants in common, holding by the same right, that all
must join ; but if they do not, advantage can only be taken
of it by plea in abatement. But this is the rule in all ac-
tions of tort, where there is a joint cause of action, and is
not confined to persons in this situation.

Indeed it would be inconsistent with the rule of law,
that a joint tenant, coparcener or tenant in common, who
sues for the whole, may recover the part to which he is
entitled ; and to another well known rule, that no matter
how much is sued for in ejectment, the plaintiff shall re-
cover so much and only so much as he proves title to.

## By JUDGE CRENSHAW.

Many errors have been assigned, but those I deem wor-
thy of notice I shall reduce to three, to wit:

First, the verdict is insufficient in finding the evidence
of facts and not facts themselves.

Second, that the plaintiff proved no title in himself; and,

Third, that he is one of several tenants in common or
joint tenants, and can only sue for and recover his undi-
vided part

As to the first position, it must be acknowledged on all

JANUARY 1825.

Stodder
v.
Powell.
sides, that a special verdict should find, not the evidence of facts, but facts themselves, as established by the evidence. In thecase at the bar, the jury have virtually found the facts, and not merely the evidence of facts. When they say certain facts were proved, and that if the law arising on those facts be with the plaintiff, then they find the defendant guilty, they obviously mean that they find the existence of those facts.

As to the second position, that the plaintiff proved no title in himself, I clearly infer from the verdict that he produced no regular evidence of a written title, and that if he has made out any title, it must be a title by possession alone.

The verdict informs the Court that Dolive claimed under a paper with a *biscuit* attached; but it does not inform the Court what was the extent of the claim or the nature of the paper, from which I conclude that it was not produced, nor were its contents proved, and that it cannot *weigh a feather.*

Equally erroneous and uncertain is the verdict, in telling the Court that the heirs of D Dolive relinquished their right to Sifroy Dolive. In this instance the jury took upon themselves to find and confound the law and the facts together. Who are heirs and what would be a sufficient relinquishment to pass their right, are questions of law, and not to be found by the special verdict of a jury. They should have found who and how many were the children, or next of kin of D. Dolive alive at his death, and what was the nature of the relinquishment, and whether it was in writing, in order that the Judge might determine whether those persons were heirs at law, and whether the relinquishment was sufficient to convey their estate. The pretended conveyance from Sifroy Dolive to Powell, and the alleged certificate from the Land Office, are equally unavailing. They were not produced, their contents were not proved, and their absence not accounted for. They therefore, with every link in the plaintiff's chain of written title, must fall to the ground ; and indeed his counsel, in his brief has candidly admitted that he produced no evidence of a written title.

If then, Samuel Powell the plaintiff, recover at all, it must be by virtue of his own possession or the possession of those under whom he claims.

The possession of Thomas Powell and of Dolive, can-

not be coupled together in order to make out a title by possession in behalf of the plaintiff, because the conveyance from Dolive to Powell being defeated, there is no privity of estate between them, so as to authorize Powell to claim under the possession of Dolive. The plaintiff must rely for title on the possession of Thomas Powell alone, for he must claim as heir to Daniel Powell, who was the son and heir of Thomas Powell. Thomas Powell was in possession six or eight years only; Daniel Powell, his son, and the plaintiff, Samuel Powell, who was his brother, were never in possession; and the question now is, whether the plaintiff, as heir to Daniel Powell, who was heir to Thomas, is entitled to recover by virtue of Thomas Powell's possession. It is said in the law authorities, that long possession, with a claim or assertion of title, is presumptive evidence of title. If this maxim be correct law, then Thomas Powell, if he were alive and went into possession with a claim of title, and were now suing for the premises, would recover, unless the defendant produced a title paramount. But I presume it cannot be maintained that this imperfect inchoate right in Thomas Powell descended to his son and heir, unless the heir also had possession, and much less to the *heir* of that heir, neither of whom ever had possession. If the heir never had possession, he cannot avail himself of the possession of his ancestor, unless that possession had been matured into a perfect right or title. The existence of a grant is said to be presumed from long possession; but it has been considered the sound policy of the law, to limit the presumption of a grant to a period of time analoalogous to that of the statute of limitations. If, according to our statute of limitations, adverse possession for thirty years would constitute a sufficient defence to bar and defeat an action of trespass to try title, brought by a person having a complete chain of title, and if from lapse of time, a grant would be presumed in favor of a defendant, from analogy, I apprehend no length of possession in the ancestor, short of that period, would warrant the presumption of a grant in favor of a plaintiff, claiming by the mere naked possession of his ancestor. In this State I limit the time to thirty years, because the action of trespass to try title is a mixed action, partaking of the nature of a possessory and real action, and in which damages and mesne profits also are recoverable; and be-

ing a mixed action, our statute of limitations bars the right to recover against a tenant, holding by adverse possession, and who has been in continued possessi·n for thirty years. Since the substitution of the action of trespass to try title, in lieu of the action of ejectment, that section of the statute which takes away the right of entry in twenty years, can have no meaning, and has become inapplicable and necessarily obsolete. The practice adopted in some of our sister States, in all cases where the action is brought to try the title and to obtain possession of the land, is to require the plaintiff in the first instance, to deduce a regular chain of title from the original grant by the sovereign of the soil down to himself, predicating their practice on the long established rules, that the plaintiff shall recover by the strength of his own title, and not by the weakness of his adversary's, and that the best evidence the nature of the case admits of, shall be produced.

In England there is much reason why a grant should be presumed from long possession. In that country it would be a rare instance to be able to find any written evidence of an original grant of lands by the government; and in most cases, intermediate conveyances have been lost and destroyed by time and accident, and no evidence can be had of the muniments of title better than that of possession.

But in Alabama, certificates and patents by the United States, are all within the memory of man. If lands have been granted, evidence of the grant can be readily obtained; if the original be lost or destroyed, an office copy may be procured. If granted by the British or Spanish government, and the party claiming under the grant has a perfect title, the acts of Congress require it to be recorded in the land office; and if an imperfect title, then it must be confirmed by the commissioners of the land office. otherwise the title is declared to be void, and the land becomes liable to be sold and granted anew by the United States. The reason therefore of the old rule, that long possession is evidence of title, does not exist with us, and the rule itself must consequently cease.

Hence, I hold that in every action to try the title to lands, it is an indispensable requisite for the plaintiff in the first instance, to shew that the land has been granted, and to trace a chain of title from the original grant, down to himself, unless he or his immediate ancestor has been in

possession a length of time analogous to the statute of limitations; in which case possession, together with evidence that the land has been granted, would be sufficient prima facie evidence. Actions between landlord and tenant, in which the title of the landlord could not be questioned, and perhaps a few other cases, would form exceptions to the rule as I have laid it down.

As to the third position, that the plaintiff is one of several joint tenants, or tenants in common, I deem the objection equally fatal. The plaintiff must claim as heir to Daniel Powell, and not as heir to his brother Thomas Powell; for if Thomas Powell had any title on his death, the land descended to his surviving son Daniel Powell. Daniel Powell at his death left surviving uncles and aunts, of which the plaintiff is one. Those uncles and aunts are equally entitled to the inheritance of Daniel Powell with the plaintiff. But the plaintiff's action and judgement is for the entire estate, and entire damages, when he was only entitled to a part. For the foregoing reasons, I am inclined to think that the judgement ought to be reversed.

By the Court. All the members of the Court are of the opinion that the case must be reversed, and a majority, that it must be remanded, that a *venire de novo* may be awarded.

Reversed and remanded.