DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

### AT NOVEMBER TERM, 1860.

---

### THE ASSOCIATES OF THE JERSEY COMPANY *vs.* ERASTUS DAVISON.

1. Where several distinct points ruled by the court are excepted to, they may be included in one bill of exceptions, and each point be the subject of an assignment of error, although authenticated and shown to the court of review by one seal and signature of the judge. Each proposition excepted to should be distinctly stated, so that the court may know the precise point presented for decision, and that the court above may know the error complained of.

2. A bill of particulars in a lien claim (except in cases of claim under contracts) must show the time when the labor was performed or materials furnished. A statement that it was between two given dates is not sufficient, and the kind of labor performed and materials furnished, and the price of each, must also appear: a charge including both labor and materials is insufficient.

3. Where one party erects buildings upon lands of another, the land will not be subject to lien, unless the owner consents to the erection of the buildings; and such consent must be given in the manner prescribed by statute, and with the intention of making an agreement that will make the land subject to lien.

415

4. If the owner of land makes a contract to sell it, and upon the condition that the vendee will erect certain buildings thereon, agrees to advance a certain amount of money for that purpose, and agrees that when such buildings are completed he will give a deed for the land, and take a mortgage from the vendee to secure the purchase money and the money advanced, it is not such consent as will make the land subject to lien for labor performed for, or materials furnished to the vendee by a third party in the erection of the building.

5. The lien law, so far as it operates, to charge the lands of a party with a debt not contracted by him or for his ultimate benefit, should be strictly construed.

6. A matter may fall within the words of a statute, but will not be controlled by it unless within the reason and spirit of the act according to the intention of the makers. When the intention is doubtful, the court will construe the law in accordance with equity and what is most convenient.

7. Evidence of the value of a house after it is finished cannot be given to prove the value of the labor performed or materials furnished in its construction.

In error to the Hudson Circuit.

*I. W. Scudder* and *A. O. Zabriskie*, for plaintiffs in error.

*J. Weart*, for defendent.

The opinion of the court was delivered by

WHELPLEY, J. The principal reasons relied upon for the reversal of this judgment are—

1. That the bill of particulars annexed to the lien claim is radically erroneous, in not specifying or exhibiting the amount and kind of labor performed, of materials furnished, and the prices at which and the times when the same were performed and furnished.

2. That there was no consent in writing by the owner of the land within the 4th section of the act regulating liens.

3. That the buildings having been erected under contract not filed in the clerk's office, upon lands of a third party, not the builder or contractor, neither the land or building was liable to a lien for work done by any person employed by the owner.

4. That the plaintiff was not entitled to support his claim by general evidence of the value of the buildings, but must show what labor he did, and what materials he furnished, and the time when and price at which they were done and fur- nished.

These are necessarily involved in the decision of this case. They appear upon the record and by the bill of exceptions sealed by the judge on the trial.

A preliminary question was made by the defendant's coun- sel that the 4th bill of exceptions was multifarious, compris- ing the decision of independent questions separately ruled by the judge, but brought before this court by one seal and sig- nature of the judge.

A writ of error brings the record only of the court be- low before this court for review. We cannot reverse for errors not appearing on the record. The object of the act of March 7th, 1797, (*Nix. Dig.* 650,) is to place upon the record the decisions of the court upon points of law involved in the case. Any bill to the charge of the court which shows on its face the precise decisions com- plained of, and that they were deliberately decided by the court as separate propositions, and so held by the court after the points were singled out and the attention of the court called to them with reference to the exception to be taken, is sufficient. A charge containing many distinct propositions of law may not be excepted to in gross. The party excepting must at the time point out the error com- plained of, so that if committed by inadvertence or for want of clearness of expression, or for any other reason, it may be corrected by the court. So if the court was requested to charge several distinct propositions at one time, and refused so to do, the refusals are sufficiently distinct; and if they appear on the whole bill, they may be the subject of several distinct assignments of error, although authenticated and shown to the court of review by one seal.

The office of a bill of exceptions is not to assign errors.

but to certify and make part of the record the precise acts or omissions complained of. It is not a pleading of the party, but the return of the judge of his decisions made upon the trial. Its sufficiency is not to be tried by the rules regulating the pleadings of the parties.

The assignment of errors is a pleading filed by the party complaining of the errors of the judge, and each assignment should be single, and not multifarious, for that reason. The true rule upon this subject is stated in *Oliver* v. *Phelps, Spencer* 183, by Hornblower, C. J.; *Coxe* v. *Field*, 1 *Green* 218 ; *Williams* v. *Shepherd*, 1 *Green* 78 ; *Ludlam* v. *Broderick*, 3 *Green* 275.

A general objection to evidence stating no reason is insufficient; a general objection to a charge is of no avail; the bill must show that the precise point of which a review is sought was made by the counsel, presented to the mind of the court, and decided before the bill was sealed ; if it do that, it is sufficient. The number of wafers used is immaterial. The decisions in our own state are so clear, and the practice in conformity thereto is so well settled, that I do not think it necessary to refer to the contrary decisions upon the statutes of other states. It is a pure matter of practice, and convenience does not require the introduction of a new rule.

The case shows that the associates contracted to sell five lots to the brother of the plaintiff below at $2520, who agreed to erect upon them five stores of a certain description, the owners of the land to convey the same, and take a mortgage on each for the price, and $2000 more to be advanced as the work progressed. The agreement reciting this conveyance and mortgage and those papers were never delivered to the party, Oliver Davison ; but by agreement in writing, dated the next day after the date of the original agreement, May 25th, 1858, remained in the hands of Dudley S. Gregory, not to be delivered until the fourth story of each building was completed. Oliver Davison was permitted to take one copy of the

agreement for convenience, which it was stipulated should not be a delivery. The papers were to be delivered on the completion of the fourth story; but if this did not take place before the 18th June, 1859, the associates were to be at liberty to cancel the papers. On the 8th December, 1858, Oliver Davison, by endorsement upon the paper of 26th May, 1858, agreed that Gregory should give up the deeds, agreement and mortgages to be canceled.

Prior to this time, lien claims to a large amount had been made against them, contrary to the stipulations of the original agreement, which were, if liens at all, prior to the mortgages stipulated for by the associates.

The defendants refused to make further payments, and finally, on application of Oliver Davison, agreed to procure a loan for him on the security of a mortgage, to be assigned to Mr. Southmayd, treasurer of the New Jersey Railroad Company. This was to be used in extinguishing the lien claims, and to be expended for that purpose under the direction of Job Male, who was the superintendent of the building operations of the associates. Under this agreement $3500 was loaned, and the lien claims for work and labor done and materials furnished for the buildings were discharged.

Oliver Davison never completed his contract or the buildings. Erastus Davison was a sub-contractor under Oliver, though not recognized as such by the associates. On the 8th December, at the time when the agreement for canceling the undelivered papers was signed by Oliver Davison, he and the associates entered into a contract in writing to complete and finish the five buildings, which were then about two-thirds completed. This agreement stipulated that when the buildings were complete, on or before the 18th May next, that the associates should convey them to Oliver Davison for $22,600, with interest from 26th May, 1858, to be secured by full mortgages, one on each lot, payable in five years from that time, for $9040 each. The buildings were not completed according to

the contract; no deeds were ever delivered, or mortgages given by Oliver Davison.

On the 30th July, 1859, Erastus Davison filed the lien claim on which this suit is brought, against Oliver, as the owner of the building and against the associates, as owners of the land, stating that the work was done by Erastus for Oliver by contract.

The bill of particulars is as follows:

Jersey City, December 6th, 1858.

Oliver Davison

To Erastus Davison, Dr.

To work and materials for five stores, commencing at the banking-house of the Mechanics' and Traders' Bank, and running easterly, &c., furnished and provided from the first day of July, 1858, to the 6th day of December, 1858.

| | |
|---|---:|
| To 622,700 common brick, lime, cement, sand and workmanship | $6,227 00 |
| To 13,370 front brick, lime, sand and workmanship | 334 25 |
| To scaffolding for fronts | 50 00 |
| " 140 piles, at $6 apiece | 840 00 |
| " excavations and capping for piles | 250 00 |
| " 100 window frames, at $4 each | 400 00 |
| " curbstone and setting | 670 00 |
| " 70,000 feet of lumber and framing | 2,100 00 |
| " anchors for 5 houses | 100 00 |
| " boarding roofs | 180 00 |
| " blue stone sills, lintels, and setting | 290 00 |
| " iron fronts and setting | 500 00 |
| " painting | 25 00 |
| " plans, &c., for five stores | 500 00 |
| | $12,466 25 |
| Credits amounting to | 4,410 00 |
| | $8,056 25 |

The total claim, it will be seen, is $12,466.25, the

credits are $4410, balance $8056.25. The jury allowed $6416.70.

The bill of particulars is radically defective.

1. In not stating the *times* when the labor was performed, or any of it, or the times when the different materials were furnished. This the act plainly requires.

A statement that the work was all done, and the materials all furnished, between the 1st of July, 1858, and the 6th December, 1859, is not sufficient; it is entirely too vague, and does not answer either the letter or the spirit of the act. The act allows the gross amount to be stated where the work is done by contract between the builder and owner, and the contractor in a case covered by the provisions of the second section of the act, where the contractor may have a lien, showing plainly, when taken in connection with the rest of the section, that a wide distinction was intended to be drawn between the two cases.

The 12th section of the act declares that no debt shall be a lien by virtue of this act, unless a claim is filed, as thereinbefore provided, within one year from the furnishing the material or performing the labor, and cuts off all items included in a lien filed, beyond that period. The summons is to be issued within one year from the date of the last item of work done or materials furnished, showing that there must be items, and that each item must be dated by itself.

When was the last item of work done or materials furnished in this case? It is no answer to say that in this case the time is not material. The provision is cited to show what particularity the legislature required. The bill must be good for all purposes, no variation is allowed; it must be good when filed, and its correctness is not to be aided, or its defects supplied by a prompt suit, more than by a tardy one.

The rights of purchasers and mortgagees must be protected. The specification of time must be such as to

show when the lien for each item of labor or materials attached; and this should be particularly so against the lands of a party who does not purchase the materials or employ the labor.

2. The bill of particulars does not show the amount of labor performed, neither how many days' work were done, or how much the labor was all worth in gross.

Not a single item in the bill separates the materials from the labor, unless it be the window-frames and anchors for the five houses, and these, taken in connection with the mode in which the other charges are made, are vague; they obviously include labor; the bill is drawn upon the principle of including the labor in each item; these do not exclude it in terms.

As to the second reason, the consent in writing required.

It is obvious that neither the deeds, mortgages, or the agreement of 25th May constitute such a consent; they were never delivered, and were canceled on the 8th December; the possession of Davison, by virtue of the provisions of the escrow paper, was no delivery; it was but a lending of the paper for a temporary purpose, not a final delivery, nor was the custody of Gregory the man, necessarily the custody of Gregory the president of the associates.

The act contemplates a delivered consent, which may be recorded. If there was any consent in writing, it must have been the escrow paper, as it has been called. That certainly does imply that the buildings are to be erected by consent of the associates; it speaks of the time when the fourth story of the buildings shall be completed.

Whether this implication in a paper, which was obviously designed to answer a temporary purpose, and not to be recorded, shall operate as a consent in writing, depends upon the rule of construction to be adopted for that part of the statute. A statute may be construed literally in its operation upon one class of persons affected

by it, and strictly as to others. The lien law, so far as it operates to charge the lands of a party with a debt not contracted by him, or for his ultimate benefit, should be strictly construed. Such is the case when it is sought to charge the lands in pursuance of a consent in writing, where it can be charged in no other way. The owner of land who permits a building to be erected by another upon it, has this protection; until he consent explicitly in writing to have it become subject to the provisions of the lien law, his land cannot be held. The law exempts it until that consent is given, upon the plainest principles of natural justice, that one man's property shall not be taken to pay another's debts.

The statute contemplates that consent shall be manifested in a way similar to that required to pass an interest in lands. It adopts the analogy of a deed acknowledged and recorded, by permitting the consent to be so perpetuated and published. It is evident that this provision was mainly, if not entirely intended to enable the party erecting the building, as owner, to get a credit on the faith of the building and land. That is the object of the recording. It seems obviously right, that a writing evidently designed to answer a temporary purpose, not embodying the agreement of the parties, or any consent in direct terms, but only by vague implication, manifestly framed with the opposite intent (to prevent liens from attaching) should not be made by construction to do that which neither of the parties intended. By the policy of the act, the interest of the builder on another's land is mainly regarded, and whether when unrecorded it shall operate as a consent, is a matter in which the parties to the paper are principally interested.

Materialmen and others may protect themselves; if they rely upon a lien for payment, may require an explicit consent to be signed and delivered, and also acknowledged and recorded, before they give credit. No injustice is done them, by refusing them a lien on the lands of a

stranger against the intention of the parties to a paper drawn for an entirely different purpose. I conclude that the escrow paper is no consent in writing within the act.

Is the agreement to convey such a consent? It was not executed until the buildings were two-thirds completed. They could not be said to be erected in pursuance of any consent contained in that writing. The purpose of that agreement, was to secure the completion of the buildings, and the conveyance of the property on the giving of five separate mortgages, of $4520 each. These mortgages were intended to be first liens upon the property, thus conclusively negativing all idea that either of the parties to the agreement intended it should operate as a consent under the statute to the attaching of building liens upon the land.

The principle of construction is, that although a matter may fall within the words of the act, it shall not control it, unless within the reason and spirit also. This principle was acted upon in the case of *Beardsley* v. *Southmayd*, 3 *Green* 171; *Taberrer* v. *Brentnall*, 3 *Harr.* 262; *Howe* v. *Lawrence*, 1 *Zab.* 750; *Hoguet* v. *Wallace*, 4 *Dutcher* 523.

A thing which is within the letter of a statute, is not within it, unless within the intention of the makers. *Bac. Ab., title "Statute," I* 5; *Stradling* v. *Morgan, Plow.* 205.

When the intention is doubtful, the court will interpret the law consonant with equity and what is most convenient. *Kerlin* v. *Bull*, 1 *Dall.* 178; *Crocker* v. *Crane*, 21 *Wend.* 211; *The People* v. *Utica Insurance Co.*, 15 *Johns.* 358.

3. As to the third error relied upon, was the land or building liable to a lien for the labor of persons not employed by the associates?

This requires a construction to be put upon the last clause of the second section of the act. "And no building or land shall be liable for work done by any person not employed by the owner, or his agent, on his account."

This, if standing alone as a separate section, would ex-

clude from the benefits of the act all labor done by laborers employed by any contractor, even in cases where he had by the act a lien himself for his whole contract price. This is clearly inconsistent with the express provisions of the section of which it is a part, which declares that the building and land shall be liable to the contractor alone for work done or materials furnished in pursuance of the contract, if the contract be filed as required. The section then proceeds: " And no building or land shall be liable for work done," &c., evidently meaning, no *such* building, that is, no building erected by contract, even if the contract be not filed, shall be liable for work done by any person not employed by the owner. The section is evidently elliptical. The idea of the draftsman was, that the previous part of the section had declared the rights of all parties if the contract was filed, and that without this sentence the failure to comply with the proviso would expose a building and the land to a lien for all claims for work, and labor, and materials; although the owner had made no contract with the materialmen or laborers he designed to limit this liability to materialmen alone.

The natural office of a clause, following a proviso, requiring something to be done to give effect to the previous provision, is to define the consequences of a neglect to do such act. This the clause in question does. It means, (supplying the ellipsis,) and no *such* building or land shall in such case be liable for work done by any persons not employed by the owner.

The judge was requested to charge this, as applicable to this case, and refused, and exception was duly taken. In this there was error. The buildings were erected by contract; the lien claim of Erastus Davison can be supported only upon that supposition. The plaintiff's insistment was, that Oliver Davison was erecting the stores upon contract, and that he took a contract to do the work for him, not for the defendants. The principal part of the labor charged was for work done by persons not em-

ployed by the owner, or his agent on his account; at all events, that was a question of fact to be decided by the jury.

4. Was the evidence of the value of the houses properly received?

The issue was not what the houses were worth, but what materials had been furnished by the plaintiff that had been used in the construction of the buildings. The value of the buildings furnished no safe guide to the ascertainment of the quantity of materials furnished by the plaintiff, it could only mislead, and probably did mislead the jury.

Let the judgment be reversed.

*For affirmance*—Judge VAN DYKE.

*For reversal*—The CHANCELLOR, and Judges HAINES, VREDENBURGH, WHELPLEY, CLAWSON, COMBS, CORNELISON, KENNEDY, RISLEY, SWAIN, and WOOD.

CITED *in* Van Pelt v. Hartough, 2 *Vr.* 332; *D., L. & W. R. R. Co.* v. Daily, 8 *Vr.* 528; *State* v. Lewis, Coll., 10 *Vr.* 507; *National Bank of Metropolis* v. Sprague, 5 *C. E. Gr.* 26; *MacIntosh* v. Thurston, 10 *C. E. Gr.* 247; *Raymond* v. Post, 10 *C. E. Gr.* 451; *Jacobus* v. Mut. Ben. Life Ins. Co., 12 *C. E. Gr.* 622; *Williamson* v. N. J. Southern R. R. Co., 1 *Stew.* 296.