179 N.J. Super. 65 (1981)
LUCY RICCIO, PLAINTIFF-APPELLANT,
v.
NEW JERSEY MANUFACTURERS INSURANCE COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 6, 1981.
Decided April 28, 1981.
*67 Before Judges ANTELL and LANE.
Vincent J. Pancari argued the cause for appellant (Pancari & Pagliughi, attorneys; Walter F. Gavigan on the brief).
Florence S. Davidow argued the cause for respondent (Davidow & Davidow, attorneys; Florence S. Davidow on the brief).
The opinion of the court was delivered by LANE, J.A.D.
This appeal was argued before Judges Antell and Lane. Thereafter the attorneys for the parties consented to have Judge Seidman participate in the decision. The decision and this opinion are by Judges Seidman, Antell and Lane.
Albert Riccio, plaintiff's husband, purchased a family automobile policy from defendant insuring a 1973 Oldsmobile, a 1974 Chevrolet and a 1976 Cadillac. He paid a premium for Option 5, additional personal injury protection coverage for the 1973 Oldsmobile and the 1974 Chevrolet. On February 10, 1979, while driving one of the automobiles, he was killed in an automobile *68 accident. Plaintiff instituted suit seeking the immediate payment of the additional survivor benefits for income continuation benefits and essential services benefits, with interest and counsel fees (count 1); payment of survivor benefits for income continuation benefits and essential services benefits under the coverage of the 1973 Oldsmobile and also under the coverage of the 1974 Chevrolet (count 2); income continuation benefits in her own behalf (count 3) and punitive damages (count 4). On plaintiff's motion for summary judgment the trial judge issued a written opinion holding that plaintiff was not entitled to income continuation benefits in her own behalf and that the additional survivor benefits for income continuation benefits and essential services benefits on behalf of her husband were to be paid on a weekly basis and not as a lump sum. Upon defendant's motion for summary judgment an order was entered dismissing count 1, count 2, and count 4 and denying the motion as to count 3. The order further provided that the benefits became due and payable on April 2, 1979 and directed that interest be paid in the amount of $72.35. A counsel fee of $150 was awarded. Subsequently, plaintiff dismissed count 3.
On appeal plaintiff argues:
(1) Survivor benefits pursuant to section 4(d) or section 10 of the No Fault Act are to be paid on a lump sum basis.
(2) Since plaintiff's decedent paid two premiums for Option 5 coverage, to that extent plaintiff should recovery two survivor benefits.
N.J.S.A. 39:6A-4 d. provides:
Survivor benefits. In the event of the death of an income producer as a result of injuries sustained in an accident entitling such person to benefits under section 4 of this act, the maximum amount of benefits which could have been paid to the income producer, but for his death, under section 4 b. shall be paid to the surviving spouse, or in the event there is no surviving spouse, then to the surviving children, and in the event there are no surviving spouse or surviving children, then to the estate of the income producer.
In the event of the death of one performing essential services as a result of injuries sustained in an accident entitling such person to benefits under section 4 c. of this act, the maximum amount of benefits which could have been paid such person, under section 4 c., shall be paid to the person incurring the expense of providing such essential services.
In Muschette v. Gateway Insurance Co., 76 N.J. 560 (1978), the court said:

*69 ... It is clear that income continuation and essential services benefits are payable weekly while the injured person is alive. N.J.S.A. 39:6A-4 b. and c. The point not having been argued, and the question being debatable, we need not and do not decide whether survivor benefits, either basic (Section 4 d.) or additional (Section 10) are to be paid weekly or in a lump sum. [at 565]
A survivor is entitled to the maximum amount payable. In Maros v. Transamerica Ins. Co., 76 N.J. 572 (1978), the court held that the survivor is entitled absolutely to payment in full of a maximum amount which could have been paid as first-party "survivor's benefit" to the injured person had he lived.
Defendant urges that the legislative intent can be found by the use of the tense of the verb "incur" in N.J.S.A. 39:6A-4 d. That section provides in part that in the event of the death of one performing essential services, the maximum amount of benefits shall be paid to the person "incurring the expense of providing such essential services." Defendant maintains that this signifies that the Legislature meant that payments are to be made to the person who is actually incurring bills for expenditures at the time that such person is doing so, but that this does not say that such payments are to be made in a lump sum.
The trial judge in Maros v. Transamerica Ins. Co., 143 N.J. Super. 307, 313 (Law Div. 1976), held that to require plaintiff in that case to submit each bill for approval for the remainder of her life was contrary to the legislative intent of the statute and to the goal of prompt and efficient adjustment of claims. However, on appeal this court held that the unexpressed premise of the statutory provision in issue here was that the survivor would receive nothing more than indemnification for loss, adding that requiring the wife to submit claims for reimbursement was nothing more than would have been required of her husband, in whose place she stood, had he lived. 150 N.J. Super. 157, 160 (App.Div. 1977). In reversing the Appellate Division decision, the Supreme Court said the language "the person incurring the expense" was intended solely to identify the payee and not to create conditions precedent to the status of the payee. 76 N.J. 576-577.
*70 When interpreting a statutory mandate, a court must look to the intent of the Legislature. Levin v. Parsippany-Troy Hills Tp., 82 N.J. 174, 182 (1980); State v. Madden, 61 N.J. 377, 389 (1972). Statutory construction will turn on the breadth of the objectives of the legislation and the common sense of the situation. Jersey City Chapter, Property Owners, etc., Ass'n v. City Council, 55 N.J. 86, 100 (1969). In Mills v. East Windsor Tp., 176 N.J. Super. 271 (Tax Ct. 1980), it was stated:
... [W]hen the lawgiver's intent is in doubt, the court "ought to interpret the law to be what is most consonant to equity and least inconvenient." Kerlin's Lessee v. Bull, 1 Dall. 175, 1 U.S. 175, 1 L.Ed. 88 (Sup.Ct.Pa. 1786); Associates of Jersey Company v. Davison, 29 N.J.L. 415, 424 (E. & A. 1860). This is the doctrine of "equity of the statute" which found expression in Eyston v. Studd, 2 Plowd. 459 A. 75 Eng.Rep. (1574), and from which flows the constructional aid that has taken firm roots in our jurisprudence  that the spirit of the legislative direction prevails over its terms. See Horack, Sutherland Statutory Construction (3d ed. 1943), §§ 6001 to 6007; McCaffrey, Statutory Construction, § 4, p. 8 (1953).
... the "equity of the statute" rule does not, when properly applied, substitute the judicial for the legislative will, but rather in the consideration of all the material elements reaches the result probably intended by the draftsman had he anticipated the situation at hand. [quoted from Dvorkin v. Dover Tp., 29 N.J. 303, 315 (1959)]
This rule is especially pertinent with regard to statutes with "sweeping social objectives." Jersey City Chapter, Property Owners', etc. v. Jersey City, 55 N.J. 86, 100 (1969). See N.J. Builders, Owners, etc., Ass'n v. Blair, 60 N.J. 330 (1972). [at 278]
In General Accident Group v. Shimp, 147 N.J. Super. 404, 409 (Law Div. 1977), the trial judge noted that it was stated in the Automobile Study Commission Report to the Governor and Legislature, Reparation Reform for New Jersey Motorists (December 1971), at xi, xii, that the benefits provide appreciable reparation for all New Jersey accident victims promptly, fairly and efficiently.
Under N.J.S.A. 39:6A-4b and c an injured person's benefits are dependent upon the duration of his disability. However, a surviving spouse is entitled to the maximum allowable amount by law. The amount is fixed. There is no need for the surviving spouse to send bills or receipts to justify the amount due. To carry out the obvious intent of the Legislature a *71 surviving spouse is entitled to a lump sum payment of these benefits.
Once a surviving spouse is entitled to the benefits, there is no need for additional action by that party. The trial judge erred in ruling that plaintiff was not entitled to a lump sum payment of the benefits.
Plaintiff argues that since two premiums for Option 5 coverage were paid, she is entitled to recover two survivor benefits. She seeks to recover twice Option 5 income continuation essential services benefits and the $10,000 death benefit and does not seek duplication of the income continuation benefits.
Defendant argues that nowhere in the statute, the Commissioner's rules and regulations or in the policy is there any indication that an insured is entitled to more than one recovery of additional income continuation benefits, essential service benefits or death benefits.
Condition 3 of the policy provided:
Regardless of the number of automobiles insured per basic personal injury protection coverage pursuant to Section 4 of the New Jersey Automobile Reparation Reform Act, or the number of insurers or policies affording such coverage, there shall be no duplication of payment of basic personal injury protection benefits and the aggregate maximum amount payable under this and all applicable policies with respect to bodily injury to any one person as the result of any one accident shall not exceed the applicable amounts or limits specified in Section 4 of said Act.
The policy also contained the New Jersey Additional Personal Injury Protection Endorsement. Paragraph 3 of the schedule provides:
The limits of the Company's liability stated herein for income continuation benefits and essential services benefits shall not operate to increase the amount of any survivor benefits payable under the Basic Protection Endorsement.
N.J.A.C. 11:3-7.3(a) states that the table printed below outlines the minimum schedule of "additional personal injury protection" coverage benefits that insurers must make available in accordance with § 10 of the act.

*72
 ADDITIONAL PERSONAL INJURY PROTECTION
 Maximum Additional Weekly Maximum Additional
 Loss of Income Benefit Essential Services
 During After
 During After Total Basic Basic Total Death
 Period of Period of Maximum Payments Payments Max. Benefits
 Basic Basic Income E. (c)
 Benefits Benefits Benefits Serv.
 Payments Payments
 (a) (b)
1. $0 $100 $5,200 $0 $12 $4,380 $10,000
2. 25 125 7,800 8 20 10,220 10,000
3. 75 175 13,000 8 20 10,220 10,000
4. 150 250 20,800 8 20 10,220 10,000
5. 300 400 36,400 8 20 10,220 10,000

NOTES TO TABLE
(a) Subject to 75 per cent of the amount of weekly income in excess of $100.00 per week. (b) Subject to 75 per cent of the total weekly income. (c) Death benefit shall be payable provided death occurs within 90 days from date of accident.
GENERAL: Above schedules applicable to named insured as defined; limits apply per person, per accident. Broader forms of additional personal injury protection benefits are available on a "refer to company" basis. Nothing herein is intended to prohibit the marketing of additional coverage on a per car basis.
An insured who elects to carry additional personal injury protection could be entitled to a maximum of $36,400 for income benefits and $10,220 for essential services under Option 5. As stated in the table above, the limits apply per person, per accident.
In Allstate Ins. Co. v. McHugh, 124 N.J. Super. 105 (Ch.Div. 1973), aff'd o.b. 126 N.J. Super. 458 (App.Div. 1974), certif. den. 65 N.J. 288 (1974), the court held that defendant was not permitted to stack or pyramid uninsured motorist coverage where he paid separate premiums for two vehicles under one insurance policy. Defendant's argument that separate but equal premiums were paid for uninsured motorist coverage for each automobile in the same amount of $5 and that, therefore, double coverage should be afforded to an insured was rejected. The court said it was conceivable that defendant could be operating one vehicle with multiple passengers and his wife operating a second vehicle with multiple passengers. He said all passengers *73 in both vehicles would be covered and that this increased risk provided sufficient consideration and justification for charging a separate premium at the same rate for additional cars on the same policy.
In Chappelear v. Allstate Ins. Co., 347 So.2d 477 (Fla.D.Ct. App. 1977), and Travelers Indem. Co. v. Wolfson, 348 So.2d 661 (Fla.D.Ct.App. 1977), the courts held that personal injury protection benefits on two vehicles could not be stacked to provide more than a $5,000 recovery in a single accident. In both cases, the insured had a single policy covering two automobiles. In Travelers Indem. Co., supra, the court said [at 662] that medical payments coverage and uninsured motorist coverage were separate benefits which are purchased by the insured for his personal benefit but that personal injury protection benefits were a creation of the Legislature enacted to limit tort suits.
The controlling factor is the expressed purpose of the statute. Personal injury protection benefits are a creation of the State Legislature to provide a continuation of income and to pay for essential services when the insured is injured. The two premiums paid here were not so that the insured could receive a double recovery but were to cover the insured and his spouse should each be injured in automobile accidents involving their vehicles. The probability of an accident is increased where there are two automobiles in operation in a household than it is if there were only one.
While an insured can purchase additional personal injury protection benefits under the five specified options, he can also obtain broader forms of additional personal injury protection on a "refer to company" basis. Plaintiff's husband here had selected the additional personal injury protection coverage but did not seek a broader benefit package. Since an injured insured would not be entitled to double recovery of benefits, neither should the survivor of the injured insured. The rights of the survivor are derivative of the insured's.
*74 That portion of the judgment dismissing counts 2 and 4 is affirmed. That portion of the judgment dismissing count 1 is reversed.
The matter is remanded to the trial court for the entry of judgment on remand in accordance with this opinion. Jurisdiction is not retained.