JAMES N. HERVEY, BUILDER, AND HARLAN P. SMITH, OWNER, PLAINTIFFS IN ERROR, v. THOMAS GAY AND WILLIAM GAY, DEFENDANTS IN ERROR.

1. The written consent which, under the lien law, will bind the land of the owner for repairs, contracted for by the tenant, must be absolute in its terms.
2. Where the writing relied upon as the consent of the owner, to the making of repairs by another, contains a clause that the repairs shall not be at the expense of the owner, it is not consent within the meaning of the eighth section of the mechanics' lien law.

---

This case was certified to the Supreme Court, for its advisory opinion, from the Essex County Circuit Court, and was removed into this court by writ of error. For opinion of Supreme Court, see 12 *Vroom* 39.

For the plaintiff in error, *George W. Hubbell.*

The questions of law arising in this cause are the following, namely : whether the clause from the lease made by the defendant to the builders, which gives them permission to make repairs, is within the meaning of the eighth section of

the mechanics' lien act, approved March 27th, 1874; and, second, whether the second paper offered in evidence by the plaintiffs, to whom a permission, by the said owners, is given to said builders to make repairs, is within the meaning of the same section of the act above referred to.

· The clause from the lease referred to in the first question, is as follows: "And it is further agreed that the said parties of the second part shall take good care of the hereby demised premises, and shall, at their own costs and expense, make and do all repairs, of every description, that may be necessary for the benefit and preservation of said premises, during the continuance of this lease, and not call upon the party of the first part for any disbursements or outlay during the hereby granted term, and that all improvements made to the buildings or premises by the parties of the second part, shall belong to the party of the first part, at the expiration of this lease."

And the paper referred to in the second question, is as follows: "Permission is hereby given to James B. Hervey and X. Kercheski to make alterations to buildings marked Nos. 2, 3, 4, 6, 7, and 8, on above plan, by cleaning out furnaces, &c., in said buildings, leveling floors of Nos. 2 and 3, taking partitions from No. 9, and adding another story to same, if they desire to do so, it being understood that all materials taken from said buildings, and not used in reconstruction, are to belong to me, and subject to my disposal; the bricks not used to be piled on the grounds, and all iron work to be stored until such time as I can dispose of the same, all at their costs and expense."

It is obvious that the consideration of these questions involves the construction of the eighth section of the mechanics' lien act, approved March 27th, 1874, and that the fourth section of the same act is, as far as this controversy is concerned, identical with the eighth.

The clause in the lease and the second paper above referred to, do not amount to the consent in writing required by the act, for the following reasons:

*First.* Both papers negative the idea of liability on the part

of the owner to have his land subject to the lien of these repairs.

A consent, to be within the provisions of the fourth and eighth sections, must be a consent that, either expressly or by implication, authorizes the doing of the work, whether it relates to the erection of a building or making repairs upon the credit of the land itself. *Associates of the New Jersey Company* v. *Davidson*, 5 *Dutcher* 415.

The consent must not be clogged with any condition that is inconsistent with the right to charge the building with the cost of the work, or which impliedly forbids it. *McClintock* v. *Cresswell*, 67 *Penna. St.* 183.

The lien law, so far as it operates to charge the lands of a party with a debt not contracted by him, or for his ultimate benefit, should be strictly construed. Such is the case when it is sought to charge the land, when it is in pursuance of a consent in writing, where it can be charged in no other way. *Associates* v. *Davidson*, *supra*.

*Second.* The said papers should not be construed to be a consent in writing, within the meaning of the act, because the intention of the parties must be considered in determining whether these consents are within the statute. It clearly appears, from the face of the papers, that the repairs were to be made at the expense of the tenant, upon his responsibility, and also that it was the intention of the parties that neither the owner nor his property should be amenable to the payment of the debt contracted for repairs.

The principle of construction, as stated in *Associates* v. *Davidson*, *supra*, is that, although a matter may fall within the words of the act, it shall not control it unless within the reason and spirit also.

A thing which is within the letter of a statute, is not within the intention of the makers. *Associates* v. *Davidson*, *supra*, and cases therein cited.

*Third.* A paper which is intended to accomplish some other purpose, is not a consent within the act. A contract to convey land providing for the erection of buildings, although in

writing, does not amount to such a consent. *National Bank of the Metropolis* v. *Sprague et al.*, 5 *C. E. Green* 13.

An agreement by the vendors, under contract of purchase to furnish the vendee funds for erection of buildings upon the premises, is not a consent within the act. *McIntosh* v. *Thurston*, 10 *C. E. Green* 242.

The mechanics' lien law being in derogation of the common law, a party claiming a lien must bring himself strictly within its terms. *Mushlitt* v. *Silverman*, 50 *N. Y.* 360.

An examination of the statutes of the different states discloses the fact that the mechanics' lien acts of New Jersey and Pennsylvania alone contain provisions requiring the consent of the owner in writing, to make property liable for repairs by tenants.

For the defendant in error, *A. M. Hassell.*

This is a case involving the construction of a statute.

The plaintiff in error says, in construing this statute, that what he terms to be the reason and spirit of the act must override the plain terms of the act; and, further, that the reason and spirit make this act something else than the words import, giving them their plain meaning.

Such a construction must be erroneous, because contrary to the rule laid down by the Court of Errors in this state in the case of *Howe* v. *Lawrence*, 1 *Zab.* 743. Nevius, J., delivering the opinion of the court, says : " When the will of the legislature is clearly expressed, it ought to be followed without regard to consequences, and a construction derived from its reason and spirit should never be resorted to but where the expressions are so analogous as to render such mode of interpretation unavoidable ; and in the case before cited, (2 *Mason* 151,) Judge Story said he would not consider what in theory ought to be the law, upon philosophical and judicial reasoning, but follow the humbler duty of administering the law as he finds it."

Relying upon the rule in Howe *v.* Lawrence, pronounced by the court of last resort in this state as the law, this action

was brought; and the Supreme Court, in deciding this case, recognized the rule in Howe *v.* Lawrence as correct.   *Gay* v. *Hervey,* 12 *Vroom* 39.

The reason and spirit of an act must not govern in all cases, but must only be resorted to when that mode is rendered unavoidable.   *Howe* v. *Lawrence, supra.*

This being the rule in this state, how is it supported elsewhere?

*Potter's Dwar. on Stat.* 207, says: "The right rule of construction is to intend the legislature to have meant what they have *actually expressed,* unless some *manifest incongruity* would result from doing so, or unless the *context* clearly shows that such a construction would not be the right one."

Applying this rule to the present case, can it be pretended that a manifest incongruity would arise from a construction which gives the words used their ordinary significance, or is there anything in the context to show that such a plain interpretation is not the right one?   The answer must be negative.

The terms used are plain and unambiguous, and are not in any degree controlled by the context; and I do not know how, by construction, a court of law can curb or check the legislative will thus expressed.   *State, Gaines, pros.,* v. *Hudson Co. Ave. Com'rs,* 8 *Vroom* 12.

Judge Story, in *Conflict of Laws* 10, says: "But if in any case the plain meaning of a provision, not contradicted by any other provisions in the same instrument, is to be disregarded because we believe the framers of that instrument could not intend what they say, it must be one where the absurdity and injustice of applying the provision to the case would be so monstrous that all mankind would without hesitation unite in rejecting the application."   *Potter's Dwar. on Stat.* 208.

Applying this rule to the present case, it would sustain nothing but a plain interpretation.

But why should they ask this court for a construction concealed within the act?   This would make the words used ambiguous, whereas they are not so now.

An ambiguous sentence is one susceptible of more than one interpretation. This eighth section is not susceptible of more than one interpretation, and therefore is not ambiguous.

This appeal to the reason and spirit of the act, if carried to its logical result, would, in time, make this eighth section inoperative.

The plaintiff in error says, Show me my consent, and also show me my consent that I intended to be liable.

The statute says, Show us the consent alone, and the liability is fixed by *the act of the law.*

The act of the party in this case is to give his bare consent that the work be done.

Then the law says, Show me such a consent, and I will show you his liability as a consequence.

If the legislature meant the construction claimed by the plaintiff in error, they would have said so; if they meant the contrary, they would say what they have said, if language can be understood at all.

By the construction of the plaintiff in error, two consents are necessary: 1st. That the work be done; 2d. That the work be done with a design on the part of the owner that his building be liable therefor.

I have shown, I think, that this construction is contrary to the known rules of statutory construction, where the words are plain and not ambiguous.

I contend further, that he is liable on this ground, to wit: Every man is presumed to know the law. The moment he gave this consent in writing he knew, or was presumed to know, that his liability was fixed; knowing this, and giving the consent with this knowledge, is giving the consent intending its consequences, to wit, that the building should be liable.

And they say, in answer to this, that that idea is negatived by the very words he used in the consent. The answer is: That was a *personal covenant* with his lessee; it was no covenant with us—no covenant with nor could it possibly bind strangers to it.

But the owner has received the benefit of this work, and

equity would hold him, though no consent had been given, if he knew the work was being done. *Story's Eq. Jur.*, (*Vol. II.*, 10*th ed.*,) *p.* 491, § 1237.

It is claimed, also, that there should be no judgment against the owner because there is no privity between him and the defendant in error. But it must be remembered that this is a judgment against the *thing*, and not against the owner; the state of the case shows the judgment is to be made of the buildings and lands, not of the plaintiff in error. And this meets the true spirit of the lien law, which has its foundation in the civil law, that the expending of money or using of goods for the benefit of another, with his knowledge and consent, express or implied, raised an implied promise to pay, and gave him a right to hold the thing until the bill was paid. The mechanics' lien law of to-day carries that theory into practice on real estate, and there is evidence that a mechanics' lien law existed in the civil law.

The result reached in this case by our Supreme Court is not only sound in principle, but it is not in opposition to the case of *Associates of Jersey City* v. *Davidson*, 5 *Dutcher* 415.

There is nothing in that case which puts it on a level with this one, nor is there any case to be found in this state, except the casual remark of Whelpley, J., in the above case, indicating that the consent meant by the fourth section was that the building should be liable as a pledge. This remark by Whelpley, J., as justly stated in the opinion of Reed, J., in this cause, (12 *Vroom* 45,) was *obiter*.

The only case in favor of the construction of the plaintiff in error is that cited by Reed, J., in this case—*McClintock* v. *Creswell*, 67 *Penna. St.* 183. On examining that case, it appears it was an appeal from the lower court. The court below held the lien good; the Supreme Court reversed the county court, and held the lien would not lie; but this opinion was not unanimous.

The opinion of the court was delivered by

PARKER, J. An action was brought in the Circuit Court

of the county of Essex by Thomas Gay & Son against James B. Hervey, builder, and Harlan Smith, owner, to enforce a lien claim. Hervey and one Kercheski were tenants of the premises, and Smith was their landlord. The repairs to the building were made by Gay & Son, during the continuance of the lease, upon request of and agreement with the tenants.

At the Circuit, a formal verdict for the plaintiffs in that court was directed, subject to the advisory opinion of the Supreme Court, upon the following questions, to wit:

*First.* Whether the clause in the lease made by Smith, the owner, to Hervey and Kercheski, his tenants, which reads as follows, viz.: "And it is further agreed that the said parties of the second part shall take good care of the hereby demised premises, and shall, at their own costs and expense, make and do all repairs of every description that may be necessary for the benefit and preservation of said premises during the continuance of this lease, and not call upon the party of the first part for any disbursements or outlay during the hereby granted term, and that all the improvements made to the buildings or premises by the parties of the second part shall belong to the party of the first part at the expiration of this lease," is within the meaning of the eighth section of the mechanics' lien law approved March 27th, 1874.

*Secondly.* Whether the following paper, signed by the owner and offered in evidence by the plaintiffs, to wit: "Permission is hereby given to James Hervey and X. Kercheski to make alterations to buildings marked Nos. 2, 3, 4, 6, 7 and 8 on above plan, by cleaning out furnaces, &c., in said buildings, leveling floors of Nos. 2 and 3, taking partition from No. 9, and adding another story to same, if they desire to do so, it being understood that all materials taken from said buildings and not used in reconstruction are to belong to me and subject to my disposal, all at their cost and expense," is within the meaning of the same section.

The Supreme Court advised judgment for plaintiffs in the Circuit Court, thereby deciding that the said clause in the lease and the said paper constitute such consent of the owner,

in the meaning of the eighth section of the lien law, as will render the land and buildings liable for the repairs.

The case is brought to this court by writ of error.

It will be observed that both the lease and the subsequent paper contain the qualification that the repairs shall be at the cost and expense of the tenants.

The written consent which, under the lien law, will bind the land of the owner for repairs contracted for by the tenant, must be absolute in its terms. If the writing giving permission to the tenant to repair contain a clause that the same shall be done without any expense to the owner, but at the cost of the tenant, it is not the consent contemplated by the eighth section of the mechanics' lien law. Such qualification is inconsistent with consent to encumber the land of the owner for another's indebtedness.

The plaintiffs in this suit invoke the lease and subsequent writing to make the land liable. They cannot claim rights under part of those instruments and reject the remainder. The clauses which provide that repairs shall be at the cost and expense of the tenant must be construed in connection with the other provisions of the writings.

Where the paper relied upon as a consent of the owner to the making of repairs by another person, contains a proviso that the repairs shall not be at the expense of the owner, it is not consent within the meaning of the eighth section of the mechanics' lien law.

These views are sustained by the case of *McClintock* v. *Cresswell*, 67 *Penna. St.* 183.

The lien law of the State of Pennsylvania, so far as it has reference to the subject under consideration, is the same in substance and almost identical in phraseology with the eighth section of our act. In McClintock v. Cresswell, the lease contained the following clause, viz.: "It is agreed, also, * * * that the party of the second part is to have a new front, with glass windows and doors put in, at their own cost." The following is an extract from the opinion in that case, viz.: "The consent intended by the act under which the claim in this case

was filed, is an absolute consent—such a consent as is consistent with the right to do the work on the credit of the building, although it may not expressly authorize it.   It must not be clogged with any such condition or qualification as is inconsistent with the right to charge the building with the cost of the work, or which impliedly forbids it.   For these reasons, we are of opinion that the consent evidenced by the covenant in this lease, is not such as the law requires."

Such construction of the statute, while it protects the landowner from liability for the debt of another, does not work hardship to the mechanic and materialman.   Before giving credit, inquiry can be made if the owner of the premises had given such written consent to repair as the law contemplates, and if not, the work need not be done nor the materials furnished, unless willing to trust the tenant for payment.

The judgment should be reversed.

*For affirmance*—None.

*For reversal*—The Chancellor, Dixon, Knapp, Magie, Parker, Scudder, Clement, Dodd, Green—9.