MONMOUTH COUNTY CIRCUIT COURT.

ALEX. BEHR, PLAINTIFF (CLAIMANT), v. INTERLAKEN CONSTRUCTION COMPANY, A CORPORATION, AND HERMAN J. SCHAFFER, LEO L. KOEPPEL AND ABRAHAM WEINSTEIN, BUILDERS, AND INTERLAKEN ESTATES, INCORPORATED, AND HERMAN J. SCHAFFER, LEO L. KOEPPEL AND ABRAHAM WEINSTEIN, OWNERS, DEFENDANTS; GRASSMERE DEVELOPMENT COMPANY, BODY CORPORATE, AN OWNER, ADDED AS PARTY DEFENDANT.

For the plaintiff, *Jerome Alper*.

For Interlaken Estates, Incorporated, *Samuel Kaufman* (*Bilder & Bilder*).

For Grassmere Development Company, *Tumen & Tumen*.

LAWRENCE, J. This is a mechanics' lien suit. When brought to trial before the court and a jury, it was withdrawn from further consideration by the latter, by consent, and submitted to the trial judge for determination on the testimony, evidence and exhibits offered and received, on a finding of facts and the law regarded as applicable.

On March 21st, 1928, plaintiff filed a mechanics' lien claim against certain buildings and the land upon which they stood, as described therein, against the defendants as builders and owners, to recover $7,875, alleged to be due. The defendant construction company and the individuals joined with it and designated in the claim and complaint as builders filed no answers, and it is assumed that judgment generally by default will be, if it has not already been, entered against them.

The controversial question is whether plaintiff is entitled to special judgment against the land, owned at the time by defendant Interlaken Estates, Incorporated, title to which at the trial was shown to be in the Grassmere Development Company, body corporate, which was permitted to be added as a defendant. The answers of these defendants deny plaintiff's right to a lien on the land and its reduction to special judgment against them as owners.

The suit arises in the following circumstances: On September 29th, 1927, the defendants, Schaffer, Koeppel and Weinstein, entered into a written contract with Interlaken Estates, Incorporated (the owner), for the purchase of a tract of land which had been mapped and divided into lots, upon which they contemplated building a number of houses. The consideration involved the payment of certain sums in cash and the execution of purchase-money mortgages. A number of other provisions relating to the securing of the purchase-money and the eventual payment were incorporated which need not be referred to specifically. It may be said, however, that on the payment of $24,000, on October 28th, 1927, Interlaken Estates, Incorporated, agreed to deed to the purchasers certain of the lots; and on the payment of $25,000 on January 28th, 1928, other lots and tracts were agreed to be conveyed, while purchase-money mortgages for $55,750 each were to be executed at stipulated periods. An important modification of the agreement was made by the parties on October 27th, 1927, by an endorsement in writing, signed by them (see exhibit marked "Duplicate-P-2"), whereby the delivery and execution of the agreement was extended

to November 25th, 1927, with the understanding that $12,000 of the payment due and payable October 28th, 1927, should be paid on or before November 11th, 1927, the balance of such stipulated payment to be payable upon the delivery of the deed on November 25th, 1927.

A recital in the agreement was to the effect that it was understood that the purchasers intended to erect houses on the lots mentioned (one house on no less than fifty feet) and to place a first mortgage on the premises not to exceed $7,000; therefore it was further understood that the purchase-money mortgages would be subordinated and Interlaken Estates, Incorporated, would accept a mortgage of $650 on each house as erected, which would be credited on such purchase-money mortgages. It was then stipulated that the purchasers might take possession of the premises on the execution of the agreement, and within one week from the date thereof begin the erection of houses, not to exceed twenty-five. The agreement was accordingly executed and Schaffer, Koeppel and Weinstein (the purchasers) entered into possession of the tract of land involved, but were apparently unable to make the cash payment first stipulated, and secured the extension for the "delivery and execution of this agreement" to November 25th, 1927, subject to the cash payment of $12,000 on November 11th, 1927, and the balance of such payment on November 25th, 1927.

After taking possession, whether before or after October 27th, 1927, the date of the extension agreement, does not appear, the purchasers, in the name of the Interlaken Construction Company, contracted with the plaintiff (a boss carpenter) and others for the necessary labor and materials for the erection of the houses contemplated in the agreement for purchase. Plaintiff testified at the trial that with a gang of workmen employed by him he went to the premises during the second week in October, 1927, and began work and continued until November 22d, following, such work involving fifteen houses. On the latter date he was obliged to quit for the reason that he and his men were not being paid, and, as his statement goes, it would indicate that very little money

was paid him. In other words, it developed that not only did Schaffer, Koeppel and Weinstein—the Interlaken Construction Company—fail to pay plaintiff for his work and labor; but they were unable to raise the funds required to meet their obligations to Interlaken Estates, Incorporated, under the sale agreement, and the extension, and it was thereupon breached and canceled, prior to the filing of the mechanics' lien claim in the present suit. When this occurred, some of the houses had been substantially completed and others were left in an unfinished state. Interlaken Estates, Incorporated, later sold the property as it stood to Grassmere Development Company, which undertook to complete the unfinished houses and to go forward with the development of the tract, but was unable to do so, and the premises are now being subjected to foreclosure proceedings which have reached the point of reference to a special master for sale.

It is urged on behalf of plaintiff that he is entitled to more than a general judgment against the persons with whom he made his contract, that is to say, that he should have a judgment specially against the land on which the houses on which he and his men worked stand. It is argued that under section 7 of the Mechanics' Lien act (*Pamph. L.* 1898, *p.* 538) his claim finds support, since the agreement for sale contemplated the erection of the houses, and by its terms a written consent on the party of the owner—Interlaken Estates, Incorporated—may be inferred in the same manner as though it had been actually given to him in writing, or so made for his benefit. If this be so, then it is contended that he is entitled to a judgment specially against the land, not merely a general judgment against the persons with whom his contract was admittedly made.

Since this appears to be the primary question of law involved in the case, disposition of which will settle it as submitted, other question, such as whether the claim was filed in time, under the statute, and the amount really due, have not been considered.

Has plaintiff, therefore, proven such a written consent as is required by section 7 of the Mechanics' Lien act? Such a consent, in other words, as will justify a special judgment against the land in question? Does, in fact, the sales agreement indicate such a consent on the part of the owner?

A fair and satisfactory interpretation of the section will be found in *Luce's New Jersey Mechanics' Lien Law* (3d ed., 1923), *p.* 186, where it is said that "the consent required under sections 7, 9, 10 or 11 must be such as clearly shows that the owner intended that his lands should be subjected to a possible lien for the contemplated work, or for the contemplated indebtedness. It must amount to a guaranty. While no particular form of words is necessary, the statutory requirement that such consent must be in writing indicates that the writing must contain words which unequivocally express such an intent. It would seem, therefore, that a writing would be insufficient if it merely expresses the owner's consent that the tenant, or other person, shall erect a building on his lands, but says nothing pro or con as to who is to pay, or be chargeable therefor; and that it could not be helped by parol proof of intent, or implication from circumstances, in such case."

A careful examination of the sales agreement in the present case, coupled with the extension of the date for the "delivery and execution," does not disclose an intent on the part of the owner—Interlaken Estates, Incorporated—that its land should be subject to a possible lien or a consent to the erection of the houses thereon within the purview of section 7 of the Lien act. In fact, it now appears that the work and labor for which plaintiff seeks a recovery was performed before the date for "delivery and execution" of the agreement under the extension, and before the purchasers had made any payment whatever on account of the purchase price of the property. The suggestion on the argument that the erection of the houses was a condition of the sales agreement seems neither to be warranted nor a natural inference. What it does appear to indicate is that the houses as erected were to be paid for by the purchasers of the land—the so-called Wein-

stein interests—who were to be permitted to mortgage them and the land on which they stood for $7,000; Interlaken Estates, Incorporated, agreeing to subordinate the purchase-money mortgages thereto, taking in place thereof, as a credit, a subsequent mortgage on each house for $650, apparently as security for the purchase price of the lot on which it stood. Inasmuch, therefore, as the purchasers were to be responsible for raising the money with which to erect the houses, the situation is not unlike that indicated in *Hervey* v. *Gay,* 42 *N. J. L.* 168, where it was held that the written consent, which under the Lien law will bind the land of the owner—in that case, repairs—contracted for by the tenant, must be absolute in its terms. It is obvious, however, that the erection of the houses under the present agreement was to be entirely at the purchasers' risk, for the reason that if they failed—as they did—to make the cash payments stipulated on account of the purchase price of the land, they were apprised in advance that they would lose their interests, not only in the land but in the buildings which became when erected a part of the real estate. Plaintiff likewise was charged with knowledge of such a potentiality. In *Mackintosh* v. *Thurston,* 25 *N. J. Eq.* 242, it was said that even though the vendor agree, under the contract of purchase of land, to furnish the vendee funds for the erection of buildings upon the premises, it was not such a consent as would make the land liable to a provision similar to section 7 of the Mechanics' Lien act, but if it was such consent, the lien in such case must be subject to all liens incurred by the purchaser, which by the sale contract were to be discharged before conveyance. See, also, *Babbitt* v. *Condon,* 27 *N. J. L.* 154.

In *Associates* v. *Davison,* 29 *N. J. L.* 415, it was said that the "Lien law, so far as it operates to charge the lands of a party with a debt not contracted by him, or for his ultimate benefit, should be strictly construed. Such is the case when it is sought to charge the lands in pursuance of a consent in writing, where it can be charged in no other way. The owner of land who permits a building to be erected by another upon it, has this protection; until he consent explicitly in writing

to have it become subject to the provisions of the Lien law, his land cannot be held. The law exempts it until that consent is given, upon the plainest principles of natural justice, that one man's property shall not be taken to pay another's debts. * * * Materialmen and others may protect themselves, if they rely upon a lien for payment, in that they may require an explicit consent to be signed and delivered, and also acknowledged and recorded, before they give credit. No injustice is done them by refusing them a lien on the lands of a stranger against the intention of the parties to a paper drawn for an entirely different purpose." See, also, *Currier* v. *Cummings,* 40 *N. J. Eq.* 145; *Hervey* v. *Gay, supra; Murphy* v. *Hussa,* 70 *N. J. L.* 381; the discussion and cases cited by Mr. Luce in his book (*supra, pp.* 180, *et seq.*), and as to the nature of the consent required. *Grantwood Lumber Co.* v. *Abbott,* 80 *N. J. L.* 564; *affirmed,* 83 *Id.* 782.

The court has not stopped to consider in detail the testimony of the plaintiff at the trial in the present suit to the effect that Mr. Morgan, the secretary of Interlaken Estates, Incorporated, had by verbal statement guaranteed that he, the plaintiff, would be paid if he continued his work, or at least had in some way bound the corporation whereby the court would be justified in directing that a judgment should be specially entered against the land described in the lien claim. It is not perceived that it suffices to establish the necessary written consent contemplated or required by the Lien act, since whatever the conversations may have been, they apparently occurred after plaintiff realized that payment for his work was precarious and he either had or was considering stopping it. Moreover, the suit is not brought on any alleged guaranty made by one with authority to speak for Interlaken Estates, Incorporated, but is made to rest entirely on the provisions of the Mechanics' Lien act, particularly section 7 thereof. In fact no such guaranty is now claimed. In any event, it would seem that plaintiff can take nothing of the alleged conversation with Mr. Morgan. *Strong* v. *VanDeursen,* 23 *N. J. Eq.* 369.

Finally, it is to be observed that under the sales agreement, the permission given the purchasers to execute mortgages on the houses as erected and the land upon which they stood, to which the purchase-money mortgages, in part, were to be subordinated, was conditioned on the making of the cash payments on account of the purchase price of the land as stipulated. Should default be made in that particular, as it was, the purchasers were not entitled to a conveyance of the land, and without it, naturally they could not negotiate the building mortgages and the purchase-money mortgages would not come into existence. On the contrary, the sales agreement would be forfeited and canceled, as it was. If it be true, therefore, as argued, that the houses were to be paid for with the proceeds of the mortgages, it seems equally clear that the owner of the land had no intention of subjecting it to mechanics' liens by an inferable consent under the terms of the sales agreement, and so give priority to such claims, creating as it were a greater right or privilege than the purchasers had. *Clark* v. *Butler*, 32 *N. J. Eq.* 664, 669.

In the circumstances, it is the court's conclusion that plaintiff failed to prove that the written consent of the owner of the land within the intent and meaning of section 7 of the Mechanics' Lien act was obtained by him, or by anyone for his benefit. He is not, therefore, entitled to judgment specially against the land in question.

A rule may accordingly be submitted discharging the lien and directing a judgment of no cause of action in favor of the defendants Interlaken Estates, Incorporated, and Grassmere Development Company, body corporate, and against the plaintiff.