65 N.J. Super. 409 (1961)
168 A.2d 75
RAYMOND T. HUGHES, PLAINTIFF-APPELLANT,
v.
PASQUALE DURSO AND MARIA DURSO, HIS WIFE, OWNERS, AND EDMUND MARUT, BUILDER, DEFENDANTS-RESPONDENTS. RAYMOND T. HUGHES, PLAINTIFF-APPELLANT,
v.
PASQUALE DURSO AND MARIA DURSO, HIS WIFE, OWNERS, AND VINCENT SCARPA, BUILDER, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 9, 1961.
Decided February 14, 1961.
*410 Before Judges CONFORD, FREUND and KILKENNY.
Mr. Peter L. Hughes, Jr. argued the cause for appellant (Messrs. Stein, Stein & Hughes, attorneys).
Mr. C. Ryman Herr, Jr. argued the cause for respondents Pasquale Durso and Maria Durso, his wife, owners (Messrs. Herr & Fisher, attorneys).
The opinion of the court was delivered by KILKENNY, J.A.D.
In these consolidated mechanic's lien actions the Law Division, sitting without a jury, granted the plaintiff, a plumbing and heating contractor, who had not been paid for his labor and materials, general judgments against the respective defendant builders, Marut and Scarpa, who ordered the work done. There is no appeal therefrom. But it denied plaintiff special judgments against the defendant owners, Pasquale Durso and Maria Durso, his wife, both as to the subject lands and as to the buildings erected thereon by the aforesaid builders. Plaintiff appeals from the denial of the special judgments.
The facts are not in dispute and, with slight modifications not noteworthy here, are common to both situations. For brevity, we shall refer only to the factual pattern in the Marut case. Common questions of law are involved, so that resolution of the Marut case may be deemed equally applicable to the Scarpa action.
*411 On March 7, 1958, by written contract, the Dursos agreed to sell to Marut and one Edward Szurko a parcel of their land in Readington Township, Hunterdon County, for $4,600, upon a deposit of $1, with the balance of $4,599 payable in cash on closing title fixed for September 17, 1958. The sellers permitted the purchasers to go into possession before closing title. There was no express written consent by the owner to erect the building. However, the parties contemplated that the purchasers would erect or, at least, begin to erect a one-family dwelling house upon the land before closing title. By the contract, the sellers agreed "if desired by Purchasers, to lend to Purchasers up to $10,000.00 in installments which money is to be used by Purchasers for materials and labor for the construction of a dwelling on the premises herein described." A schedule of installment payments during the progress of construction and down to completion of the building was set forth. In that schedule, one of the payments would be made when, inter alia, "rough plumbing installed"; another was due "when plumbing tub is installed"; and the final payment on completion required "plumbing fixtures." It was further provided:
"Whatever monies are loaned to purchasers shall be in accordance with the above installment schedule and shall be due and payable at the time of the actual closing of title." (Emphasis supplied)
As further evidence that the parties contemplated some construction before closing title, we note the following contract provision:
"Purchasers acknowledge that Seller is executing this contract based upon the personal credit and ability of Purchasers. Parties specifically agree that this contract may not be assigned and that any construction work to be done on the premises prior to closing will be done by Purchasers and their employees or said contractors." (Emphasis supplied)
Plaintiff contracted in writing with Marut for the installation of the plumbing and heating. Plaintiff filed a *412 Mechanic's Notice of Intention and sent a copy to the Dursos. No building contract has been filed. After completing the work on the Marut job and not receiving the amount due under his contract, plaintiff apparently duly filed his lien claim and instituted his mechanic's lien suit against Marut, as builder, and against the Dursos, as owners, with the result first above noted.
Title never closed. Although the reason is not made manifest upon the record, we assume that Marut defaulted in his contract with the Dursos, as he did in his contract with the plaintiff.
Plaintiff's right to a special judgment against the Dursos, in the form of a lien against the land to which they still have legal title, and/or a lien against the building thereon, depends upon the meaning of and applicability of the facts of this case to N.J.S. 2A:44-68. That section provides:
"When a building is erected by a * * * person other than the owner of the land upon which it is erected, only the building and the estate of the * * * person so erecting such building shall be subject to the lien created by this article, unless erected with the written consent of the owner of such land * * *."
There is no doubt here that a building was erected by a person other than the "owner" of the land upon which it was erected. That person was Marut, a vendee in lawful possession before closing title by permission of the vendor. While a vendee under a contract for the sale of realty is the equitable owner from the moment the contract is made, we interpret the statute's use of the word "owner" to refer to its usual meaning of legal owner. So understood, we must now decide whether the building was erected "with the written consent of the owner of such land," namely, the Dursos. If it was, plaintiff would be entitled to a lien against the land. If not, such a lien against the land must be denied.
The last quoted words have been strictly construed by our courts in several prior decisions, involving comparable language *413 in earlier statutes from which N.J.S. 2A:44-68 has been derived. In Behr v. Interlaken Construction Co., 7 N.J. Misc. 743, 147 A. 499 (Cir. Ct. 1929), plaintiff, a boss carpenter, who was owed $7,875 by a builder, whose contract of purchase allowed him before closing title to go into possession and erect houses, was denied a mechanic's lien against the lands of the defendant owner. In holding that consent to the purchaser-builder to commence construction of the houses did not constitute the consent required under the lien law to warrant a lien against the owner's land, the court said, 7 N.J. Misc., at page 748:
"It is obvious, however, that the erection of the houses under the present agreement was to be entirely at the purchasers' risk, for the reason that if they failed  as they did  to make the cash payments stipulated on account of the purchase price of the land, they were apprised in advance that they would lose their interest, not only in the land but in the buildings which became when erected a part of the real estate. Plaintiff likewise was charged with knowledge of such a potentiality."
In the case before us, the contract between the seller-land-owner and purchaser-builder contained this analogous language:
"Parties recognize that material, men and laborers may not properly file Mechanic's Notices of Intention against the property and name of Seller, since Seller is not constructing any building on the property. However, Purchasers agree that they will cause to be discharged any Mechanic's Notice of Intention or stop notices which may be filed either against the Purchasers or Seller before any installment is paid to him."
In Macintosh v. Thurston, 25 N.J. Eq. 242 (Ch. 1874), it was said that even though the vendor agrees, under the contract of purchase of land, to furnish the vendee funds for the erection of buildings upon the premises, it was not such a consent as would make the land liable to a lien. See, also, Babbit v. Condon, 27 N.J.L. 154 (Sup. Ct. 1858). Therefore, the agreement here by the land owners to make construction loans to the purchasers, "if desired by Purchasers," *414 is not the statutory consent by the owner needed to make his lands subject to lien.
In Associates of Jersey Co. v. Davison, 29 N.J.L. 415 (E. & A. 1860), following the rule of strict construction, the court held that:
"The owner of land who permits a building to be erected by another upon it has this protection; until he consents explicitly in writing to have it become subject to the provisions of the Lien law, his land cannot be held. The law exempts it until that consent is given, upon the plainest principles of natural justice, that one man's property shall not be taken to pay another man's debts. * * * Materialmen and others may protect themselves, if they rely upon a lien for payment, in that they may require an explicit consent to be signed and delivered * * *. No injustice is done them by refusing them a lien on the lands of a stranger against the intention of the parties to a paper drawn for an entirely different purpose." (Emphasis supplied)
See, also, Hervey v. Gay, 42 N.J.L. 168 (E. & A. 1880); Currier v. Cummings, 40 N.J. Eq. 145 (Ch. 1885); Murphy v. Hussa, 70 N.J.L. 381 (Sup. Ct. 1904); Grantwood Lumber & Supply Co. v. Abbott, 80 N.J.L. 564 (Sup. Ct. 1911), affirmed 83 N.J.L. 782 (E. & A. 1912); and Annotations, 58 A.L.R. 911 (1929); 102 A.L.R. 233 (1936).
In Stein v. Pennsylvania Dock etc. Co., 10 N.J. Misc. 568, 159 A. 683 (Cir. Ct. 1932), the lease permitted the tenant to make repairs. It was held that this did not constitute such consent by the owner as to permit mechanic's liens against the owner's interest in the property. The court stated, 10 N.J. Misc., at page 574:
"In order for the lien to attach the consent must be given in the manner prescribed by the statute and with the intention of subjecting the land to a lien. * * * Even though permission is given by the owner or tenant to construct buildings upon the land at the cost and expense of the builder, as was done in the instant cases, such permission has been construed as not being the full consent required by the Mechanics' Lien law, in order to impress a lien upon the land." (Emphasis supplied)
*415 There was no written consent by the defendants, owners of the land, specifically referable to N.J.S. 2A:44-68, and the statutory consent was not explicitly contained within the provisions of the contract for the sale of the property. The philosophy of the above cases is that the written consent referred to by the statute must evidence a clear intent by the owner to subject his interest in the land to a possible mechanic's lien. Mere written consent to a vendee to enter upon the land and erect a building is not sufficient. We feel constrained to follow the strict construction enunciated in these cases. They have stood as the law for a long time and, meanwhile, the statute has been revised with no substantial change in the particular language involved herein. Under settled rules of statutory construction, such long-accepted judicial interpretation, in the face of intervening legislative revision without changing the language construed, is strong evidence of legislative sanction of the judicial construction. Commercial Trust Co. of New Jersey v. Hudson County Board of Taxation, 87 N.J.L. 179, 183 (E. & A. 1914); 3 Sutherland Statutory Construction (3d ed.) § 5805, p. 81; Statutory Construction, Crawford, § 224, p. 406. Therefore, it is our judgment that the plaintiff is not entitled to a lien on the defendants' lands.
However, N.J.S. 2A:44-68, supra, expressly and plainly provides that, absent the written consent of the owner to the erection, "only the building and the estate of the tenant or person so erecting such building shall be subject to the lien created by this article." Since an estate is an interest in land, reference to "estate" in the statute must be to the tenancy or leasehold right of an occupant, or to the equitable ownership of a vendee in possession. If any such estate still exists in these builders, plaintiff's lien would extend thereto. In addition, the statute gives him a lien against the building, and "only the building," as distinguished from the land upon which it is erected. When plaintiff's attorney pressed for a lien against the "building," as provided in N.J.S. 2A:44-68, *416 the trial court expressed concern as to practicalities, in these words:
"The house is attached to the land at the moment. He can't take the building off the land. I am being practical now. How would you resolve this mess, which is what you have to do eventually if you are going to get your money?"
In its decision and opinion, the trial court found that the owner had not given the written consent contemplated by the statute. It made no express determination as to plaintiff's right to a lien against the building alone, except the implicit denial thereof in the formal judgment and for reasons of practicality, impliedly evidenced by the above bit of colloquy. Aside from Harris v. Bergamo, 7 N.J. Misc. 1098, 148 A. 645 (Cir. Ct. 1929) discussed infra, we find and are cited to no New Jersey case precisely in point. (We discuss hereinafter the question whether an estate of some kind in the land must be possessed by the person ordering the work done.) While decisions elsewhere are peculiarly dependent on the particular statutory language involved, it appears that in most jurisdictions a mechanic's lien may attach to and be enforced against buildings or improvements alone. 36 Am. Jur., Mechanics' Liens, § 173, p. 115; 57 C.J.S. Mechanics' Liens § 188, pp. 739-740, and § 71, p. 575; and see also McHugh Electric Co. v. Hessler Realty & Develop. Co., 50 Del. 296, 129 A.2d 654 (Sup. Ct. 1957).
Impracticality in enforcement was ascribed as the reason for denying a lien against the building alone, despite the clear wording of the statute, in Harris v. Bergamo, supra. The court there held that the lien could not go against the building independently of the land, because the building had become part of the freehold. It reasoned that to permit a lien against the building after termination of the tenancy, would be, in effect, the allowance of a lien against the owner. It was suggested that if the building was removable by the tenant, who erected it, at the end of the tenancy, one might be able to assert the lien against the building alone.
*417 We also recognize the practical difficulty inherent in allowing a lien against a building, while disallowing it against the land. Ordinarily, a judgment lien is enforcible by an execution sale. If the building here were severable, there would be no problem. But how can there be an effective sale of the building alone when it is firmly attached to the land? If the builder-buyer still had an enforcible contract right to the land, the court could order a sale of his equitable interest in the land and the building thereon in the nature of an equitable execution and could resolve the priorities of the parties in the proceeds. That point was not developed at the trial by reason of the decision that no right of lien existed, simply because the owners had not given their written consent. There has been no judicial finding that the builder-buyers have lost their estate in the lands. We can only speculate as to the circumstances under which their interests may have been forfeited or surrendered. There is need for such a finding. It is not our function to anticipate proofs not submitted to the trial court. Nor may we deprive a person of a right granted by statute, merely because there may be practical problems involved in enforcing that right.
When N.J.S. 2A:44-68 grants a right to a mechanic's lien against "only the building and the estate of the * * * person so erecting such building," does the statute sanction a lien against the building, if the person erecting it never had, or no longer has, any estate in the land upon which it stands? It has been held that, if a person who erects a building on the land of another, without the owner's written consent, never had any estate in that land, a mechanic's lien may not be validly asserted against the building alone, or against the land.
In Babbitt v. Condon, supra, a son engaged a builder to erect a house on land occupied by the son but owned by his father. There was no averment that the son had any legal estate or interest whatever in the land, as a tenant or by virtue of contract. The house was built without obtaining the written consent of the father. The money for the erection *418 was furnished by the father, but the house was built under the immediate superintendence of the son and was designed for his use. An unpaid materialman filed a mechanic's lien and sued the son and the builder, but the father was not made a party. It was held that the lien could not be enforced either against the land or building. The court said, 27 N.J.L., at page 157:
"The lien law manifestly contemplates that the party by whom the building is erected, and against whom and whose interest the lien is to be enforced, shall have some estate or interest in the land upon which the building is erected."
And at page 160:
"The lien, therefore, must operate, if at all, not only upon the building, but also upon some interest or estate in the land."
Our courts have ruled that the Mechanics Lien act does not permit a lien against a building alone, independent of some estate or interest in the land upon which it is located. In Coddington, et al. v. Hudson County Dry Dock Co., 31 N.J.L. 477 (E. & A. 1863), an unpaid materialman sued the builder and owner of a floating dock under the mechanics' lien law. The movable structure was launched into the tide waters of the Hudson River and was floated in those waters about twelve feet from defendant's pier, to which it was fastened. The court denied plaintiff's lien claim, holding that in order to subject a building to the lien law, the owner of the building must have some estate in the land on which it stands. Unless this is so, there can be no lien either on the land or the building.
So, too, in Leaver v. Kilmer, 71 N.J.L. 291, 292 (E. & A. 1905), the Babbitt and Coddington cases were cited as authority for the conclusion:
"It was therefore erroneous to impose a lien on the building, and not upon the land on which it was erected, or some estate or interest therein." (Emphasis supplied)
*419 The instant case is distinguishable from Babbitt, in that here the builders did have some estate or interest in the lands, upon which the buildings were erected, at least prior to and at the time when the plaintiff did his plumbing and heating work therein. The builders were equitable owners under a valid contract of purchase and in lawful possession with the consent of the legal owners. The sellers knew that the buildings were being erected and had covenanted in the contract of sale to supply construction money as a loan before the closing of title. Also, unlike the dock floating in the tide waters and not affixed to any lot of land, in the Coddington case, the new dwellings here were built upon definite lots of land, in which the builders did have an estate and interest. Thus, the rule of Leaver v. Kilmer, supra, that a mechanic's lien will not be imposed upon a building unless in connection with some estate or interest in the land on which it is erected, is not necessarily transgressed by the allowance of a lien in this case.
We are not deciding at this time whether plaintiff's statutory right to assert a mechanic's lien against the buildings and the estates which the builders unquestionably had in the lands under their contracts of purchase, when plaintiff did his plumbing and heating work in the buildings, terminated with the expiration of the estates of those builders. We refrain from doing so, first, because the issue is of considerable substance and difficulty, but has not been briefed or argued before us by respective counsel; 58 A.L.R. 911 (1929); 102 A.L.R. 233 (1936); and, secondly because facts sufficiently implicating this issue have not been established in any trial record. Also, it is presently unknown whether plaintiff has a right to the lien under N.J.S. 2A:44-68, notwithstanding termination of the builders' estates by forfeiture, surrender or otherwise, by reason of any estoppel or other legal or equitable consideration, resulting from the conduct of the vendors. Depending upon plenary factual development these legal questions may become ripe for decision.
*420 Furthermore, at the trial, both counsel agreed to submit first the legal question as to whether plaintiff was entitled to any lien, and, if so, to reserve for later determination the amount of the lien, if any. Expected expert witnesses for both sides had not yet arrived in court when the trial commenced and this factor added to the above practical handling of the trial. The legal decision being completely adverse to the plaintiff, it became unnecessary to resolve the amount of his liens. If it is true, as defendants suggest in their brief, that two-thirds of plaintiff's work had been done in the Marut building before June 6, 1958, when plaintiff filed his Mechanic's Notice of Intention, then plaintiff's lien would be limited to the value of the work done after the notice was filed. N.J.S. 2A:44-71; Apex Roofing Supply Co. v. Howell, 59 N.J. Super. 462, 470 (App. Div. 1960). Thus, the factual development may reduce the legal problem to a "de minimis" situation.
While we could exercise our original jurisdiction, we deem it more expedient and appropriate to remand the matter to the trial court for the further proofs and determinations indicated above.
Accordingly, the judgment below is modified to the extent that it is inconsistent with the views expressed herein and the matter is remanded to the trial court for further proofs and determinations.
No costs on this appeal.